**Donald G. PARKER, Plaintiff–Appellant,**

v.

**CITY OF GOLDEN, a Colorado municipal corporation; City Council of the City of Golden; Interplaza West Associates, LLP, a Colorado limited liability partnership; Sullivan Three Limited Liability Company, a Colorado limited liability company; Kohl's Department Stores, Inc., a Delaware corporation; Home Depot U.S.A., Inc., a Delaware corporation; Autosports Body Shop, Inc.; Christopher Hall Realty, LLC; Golden Properties, Ltd., a Colorado corporation; GEI–H, LLC, a Colorado limited liability company; GEI–6, LLC, a Colorado limited liability company; Coors Technology Center Owners Association, a Colorado non-profit corporation; Coors Ceramic Company, Inc., a Colorado corporation; Coors Porcelain Company, a Colorado corporation, n/k/a CoorsTek, Inc.; Bounce, Inc., a Colorado corporation; Graphic Packaging Corporation of Colorado, a Colorado corporation; Dada Development, Inc., a Colorado corporation; 16200 Table Mountain Parkway Investors, LLC, a Delaware corporation; and Coors Brewing Co., a Colorado corporation, Defendants–Appellees.**

**No. 03CA1946.**

Colorado Court of Appeals, Div. I.

March 10, 2005.

Certiorari Granted Aug. 22, 2005.

558

Victor F. Boog & Associates, P.C., Victor F. Boog, Lakewood, Colorado, for Plaintiff–Appellant.

Windholz & Associates, James A. Windholz, David S. Williamson, William P. Hayashi, Boulder, Colorado, for Defendants–Appellees City of Golden and City Council of the City of Golden.

Senn Visciano Kirschenbaum Merrick P.C., Frank W. Visciano, Denver, Colorado, for Defendants–Appellees Interplaza West Associates, LLP, and Home Depot U.S.A., Inc.

Lottner Rubin Fishman Brown & Saul, P.C., Richard I. Brown, Denver, Colorado for Defendant–Appellee Sullivan Three Limited Liability Company.

Rumler Tarbox Lyden Law Corporation PC, James A. Jablonski; Gorsuch Kirgis, L.L.P., Byeongsook Seo, Denver, Colorado, for Defendant–Appellee Kohl's Department Stores, Inc.

Boatright, Ripp & Sharpe, LLC, William R. Sharpe, Wheat Ridge, Colorado, for Defendant–Appellee Autosports Body Shop, Inc.

Stiner, Beck, Jonson & Nolan, LLP, Thomas A. Nolan, Golden, Colorado, for Defendant–Appellee Christopher Hall Realty, LLC.

Holme Roberts & Owen LLP, James C. Ruh, Kary Klismet, Denver, Colorado, for Defendants–Appellees Golden Properties, Ltd.; GEI–H, LLC; GEI–6, LLC; Coors Technology Center Owners Association;

Coors Ceramic Company, Inc.; Coors Porcelain Company; Bounce, Inc.; Graphic Packaging Corporation of Colorado; Dada Development, Inc.; 16200 Table Mountain Parkway Investors, LLC; and Coors Brewing Co.

CASEBOLT, J.

In this declaratory judgment action, plaintiff, Donald G. Parker, appeals the summary judgment in favor of defendants, the City of Golden and its City Council (Golden), and certain land developers, Interplaza West Associates, LLP; Sullivan Three Limited Liability Company; Kohl's Department Stores, Inc.; Home Depot U.S.A., Inc.; Autosports Body Shop, Inc.; Christopher Hall Realty, LLC; Golden Properties, Ltd.; GEI–H, LLC; GEI–6, LLC; Coors Technology Center Owners Association; Coors Ceramic Company, Inc.; Coors Porcelain Company, n/k/a CoorsTek, Inc.; Bounce, Inc.; Graphic Packaging Corporation of Colorado; Dada Development, Inc.; 16200 Table Mountain Parkway Investors, LLC; and Coors Brewing Co. (developers). We reverse and remand for further proceedings.

In the early 1990s, Golden established an economic incentive program with the intent of revitalizing the community. This program, contained in § 18.60 of the Golden Municipal Code (GMC), authorized reimbursement of incremental local property tax for up to seven years to persons or entities contracting with Golden to develop property. Section 18.60.050 of the GMC provided, however, that no vested property right or other such property interests or rights were granted or impliedly conferred by the economic program.

Effective December 31, 1992, voters amended the Colorado Constitution to add article X, section 20, known as the Taxpayer's Bill of Rights (TABOR). Under that provision, as relevant here, voter approval is required in advance for the creation of any multiple fiscal year direct or indirect debt or other financial obligation by the state or any local government.

In 1995, city voters defeated a proposed multi-year economic incentive proposal for Interplaza West Associates, LLP, one of the developer defendants here. Thereafter, in 1998 and 1999, Golden entered into agreements with developers in which it agreed to provide partial reimbursement of local property, sales, and use taxes and to waive certain development application fees and charges, in return for developers' promises to relocate or establish businesses, annex property, and develop their real property. The agreements extended beyond 2001. To comply with TABOR, all the agreements provided that the reimbursements were subject to annual appropriations by Golden and stipulated that they did not constitute a multiple fiscal year debt or other financial obligation of Golden.

On November 6, 2001, city voters approved an amendment to the Golden City Charter, requiring voter approval for any development subsidy or incentive in excess of $25,000. Under the amendment, development subsidies include tax waivers, credits, or refunds granted in connection with establishment of a commercial or residential development; payments or rebates based upon sales taxes collected; and waivers or deferments of development fees. The amendment did not specify whether it was intended to apply retroactively to the agreements at issue here.

On June 13, 2002, Golden passed Ordinance 1590, providing in section 2 that "[the] charter amendment shall apply to all new City economic development subsidies or incentives after November 6, 2001" and in section 3 that all "economic development subsidy or incentive agreements in effect on November 6, 2001 shall remain in effect, subject however to the provisions and conditions of each such individual agreement."

Plaintiff, a resident and taxpayer of Golden, then commenced this action, seeking a declaratory judgment that the charter amendment applies to any development subsidies or incentives, provided under the agreements, paid after November 6, 2001, and that Ordinance 1590 is void because it contravenes the charter amendment. He also sought injunctive relief to prevent Golden from providing further subsidies or incentives in excess of $25,000 to the developers

after November 6, 2001, without voter approval.

Defendants filed a motion for summary judgment, which the trial court granted. The court determined that developers had vested rights in their 1998 and 1999 agreements to have Golden exercise its budgetary discretion for appropriation each year and that those rights would be unconstitutionally impaired under the Contracts Clauses of the United States and Colorado Constitutions if the charter amendment were construed to apply. Accordingly, it held that the charter amendment did not apply to the agreements. It also concluded that Ordinance 1590 did not conflict with the charter amendment. This appeal followed.

## I.

■ Plaintiff contends that developers do not have vested rights under the incentive agreements that would preclude the application of the charter amendment to subsidies and incentives paid to developers after November 6, 2001, the date of the amendment's approval. We agree.

■ Appellate review of a summary judgment is de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251 (Colo.1995).

Summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007 (Colo.1992).

### A. Retroactivity

■■ Absent legislative intent to the contrary, a statute is presumed to operate prospectively, meaning it operates on transactions occurring after its effective date. *See Coffman v. State Farm Mut. Auto. Ins. Co.*, 884 P.2d 275 (Colo.1994). A statute is retroactive if it operates on transactions that have already occurred or on rights and obligations that existed before its effective date. *Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6 (Colo.1993).

■ Retroactive application of statutes is generally disfavored by both common law and statute. Although disfavored, the retroactive application of a statute is not necessarily unconstitutional. *Kuhn v. State*, 924 P.2d 1053 (Colo.1996). Because some retroactively applied legislation is constitutional while some is not, Colorado courts have marked this distinction by describing a statute whose retroactive application is unconstitutional as "retrospective." *Ficarra v. Dep't of Regulatory Agencies, supra.*

Here, Golden conceded in the trial court that a question of fact existed as to whether the charter amendment was intended to be retroactive. However, it asserted that if application of the charter amendment to the agreements violated the constitutional proscription against retrospective laws, the intention of the drafters would not cure any constitutional violation. Agreeing, the trial court assumed the amendment to be retroactive for purposes of its analysis. We will do the same.

### B. Retrospectivity

■ Colo. Const. art. II, § 11 provides that "[n]o ... law impairing the obligation of contracts, or retrospective in its operation ... shall be passed by the general assembly." The purpose of this proscription is to prevent unfairness that would result from changing the consequences of an act after that act has occurred. *Van Sickle v. Boyes*, 797 P.2d 1267 (Colo.1990).

■ A law is retrospective in operation when it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *P–W Invs. Inc. v. City of Westminster*, 655 P.2d 1365, 1371 (Colo.1982)(quoting *Denver, S. Park & Pac. Ry. v. Woodward*, 4 Colo. 162, 167 (1878)).

■ Retrospectivity analysis consists of two inquiries. First, we must consider whether a "vested right" is implicated. Second, if not, we must consider there is a "new obligation, new duty, or new disability." Although this test directs that retrospectivity

may result from the creation of a new obligation, imposition of a new duty, or attachment of a new disability, the application of a law is not rendered retrospective merely because the facts upon which it operates occurred before the adoption of the statute. *See In re Estate of DeWitt,* 54 P.3d 849 (Colo.2002).

A vested right is one that is not dependent on the common law or statute, but instead has an independent existence. There is no bright line test for determining whether a right is vested.

It is commonly said that a vested right "must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another."

*Ficarra v. Dep't of Regulatory Agencies, supra,* 849 P.2d at 16 (quoting *People ex rel. Eitel v. Lindheimer,* 371 Ill. 367, 373, 21 N.E.2d 318, 321 (1939)); *cf. Steinfeld v. Nielsen,* 15 Ariz. 424, 465, 139 P. 879, 896 (1913)("A 'vested right' is ... an immediate fixed right to present or future enjoyment, or where the interest does not depend on a period, or an event, that is uncertain.").

In *Estate of DeWitt, supra,* the court employed a different test. In determining whether a vested right is implicated, courts should consider: (1) whether the public interest is advanced or retarded; (2) whether the law gives effect to or defeats the bona fide intentions or reasonable expectations of the affected individuals; and (3) whether the law surprises individuals who have relied on a contrary law.

### 1. Impairment of Vested Rights

Under all the articulated tests, we conclude for a number of reasons that the agreements between Golden and developers do not create vested rights and obligations.

First, defendants concede that Golden does not have an obligation and developers do not have a fixed right to payment in any particular year. Rather, Golden has budgetary discretion to appropriate funds with which to make any payment, and no consequences flow from a decision not to appropriate funds or to deny payment. Essentially, developers have no more than a mere expectation or hope; their interest is completely dependent upon an event that is uncertain. *See In re Estate of DeWitt, supra.*

Second, all the agreements provide that the reimbursements are subject to annual appropriations by Golden and stipulate that they do not constitute a multiple fiscal year debt or other financial obligation of Golden. Hence, the agreements themselves preclude the existence of financial obligations beyond one year under TABOR. *See Bd. of County Comm'rs v. Dougherty, Dawkins, Strand & Bigelow Inc.,* 890 P.2d 199 (Colo.App.1994)(provision in lease obligating county only year-to-year allowed county to elect to accept or reject continuation of lease without penalty), *overruled on other grounds by In re Submission of Interrogatories on House Bill 99–1325,* 979 P.2d 549 (Colo.1999).

Third, at least some of the agreements contain specific language stating that "it is understood and agreed ... that no vested Property Rights are granted by this agreement." While defendants argue that this phrase is in specific reference to § 24–68–101, et seq., C.R.S.2004, which provides a specific procedure for a landowner to obtain vested property rights from a local government, we find nothing in the agreement itself that supports this interpretation. Indeed, there is no statutory or other code citation following this particular contract language. Nor are we persuaded that there is a distinction between "contract rights" and "property rights" that makes any difference in this context.

Fourth, the GMC specifically provides that no vested property right or other such property interests or rights are to be granted or impliedly conferred upon any person or entity by the economic incentives program. This language negates a legal or equitable claim to the present or future enjoyment of an immediate fixed right.

Defendants nevertheless argue that the vested rights are not financial rights. Rath-

er, defendants maintain that they are vested nonfinancial rights and obligations that continue during the term of the agreements, namely, Golden's implied duty to act in good faith in the budgetary appropriation process during the term of the agreements, and developers' right to continue to "earn back" expenses in any year following nonoccurrence of an appropriation. We disagree.

■ Contrary to defendants' contention, the implied duty of good faith and fair dealing in the performance of the contract cannot be or confer a vested right, because a vested right is one that is not dependent on the common law or statute, but instead has an independent existence. *See Ficarra v. Dep't of Regulatory Agencies, supra.* The implied duty of good faith and fair dealing that exists in every contract is a product of the common law and has no independent existence. *See Amoco Oil Co. v. Ervin,* 908 P.2d 493 (Colo. 1995). Hence, it cannot confer vested rights upon developers here.

Moreover, whatever "nonfinancial rights" might exist under the agreements, the ultimate action that developers hope Golden will take is purely financial: appropriation for and payment of developers' "earned-back" expenses in each year. A vested right to multi-year payments by a local government cannot exist under TABOR, absent voter approval. In addition, to the extent that defendants contend that the vested right is the right to have Golden exercise its budgetary discretion in good faith, and not a right to receive payment, that contention ignores that plaintiff's claim is only that the right to payment cannot be vested. Indeed, his complaint for declaratory judgment asserts only that future payments cannot be made without complying with the charter amendment, not that the amendment prohibits any other obligations.

Further, applying the factors identified in *Estate of DeWitt,* we conclude that vested rights are not implicated. While there is a benefit to the public in honoring the agreements and the commitments and obligations arising from them, as well as in revitalizing the city, there is also a legitimate interest in limiting public expenditures.

Concerning the remainder of the *DeWitt* factors, we note that in 1995, city voters rejected a similar economic incentive proposal that was presented in a referendum. This vote negates any expectation of the contracting parties and reduces any "surprise" generated by the charter amendment.

For these reasons, we conclude that no vested rights exist under the agreements at issue that would be impaired by the retroactive application of the charter amendment.

### 2. New Disability, Duty, or Obligation

■ Regarding the second step of the retrospectivity analysis, we conclude that the application of the amendment would not result in the creation of a new disability, duty, or obligation with respect to transactions or considerations already past.

The voter approval required under the amendment cannot be considered a "new disability" because TABOR, in place before the agreements were entered into, prohibits Golden from creating *any* multi-fiscal year financial obligation without voter approval. Thus, the amendment's requirement, that voter approval be obtained for any payment above $25,000, is less onerous than that of TABOR.

In addition, the nature of developers' interest is a mere expectancy. Thus, although the charter amendment acts to defeat their expectancy interest in the reimbursements, it cannot be reasoned that their inability to receive such reimbursements unconstitutionally imposes a new disability. *See In re Estate of DeWitt, supra.* In this case, where the amendment was adopted by popular vote to regulate Golden's grants of development subsidies or incentives, we decline to conclude that the amendment imposes a "disability" of constitutional magnitude upon developers who have a mere expectancy interest. *See In re Estate of DeWitt, supra.*

Hence, the application of the amendment to the incentive agreements does not create a new obligation, duty, or disability.

In sum, we conclude that the charter amendment is not unconstitutionally retrospective with respect to developers' agree-

ments, and the trial court erred in determining otherwise.

## II.

■ We next address the prohibition against impairment of contracts found in both the United States and Colorado Constitutions, U.S. Const. art. I, § 10; Colo. Const. art. II, § 11, and conclude that the application of the charter amendment does not violate either one.

■ These clauses, while designed to protect vested contract rights from legislative invasion, are not to be interpreted as absolute. *In re Estate of DeWitt, supra.*

■ In assessing a Contracts Clause violation, the inquiry is whether the change in law operates as a substantial impairment of a contractual relationship. *In re Estate of DeWitt, supra* (citing *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). In turn, this inquiry requires consideration of three factors: (1) whether there is a contractual relationship, which requires that a party demonstrate that the contract gave it a vested right; (2) whether a change in the law impairs that contractual relationship; and (3) whether the impairment is substantial. *See Allied Structural Steel Co. v. Spannaus, supra.*

Here, we have already concluded that the agreements at issue do not create or confer any vested contract rights upon developers, which defeats any claim under the Contracts Clauses. Thus, we need not address the remaining prongs of the test.

## III.

Plaintiff contends the trial court incorrectly determined that sections 2 and 3 of Ordinance 1590, quoted above, are valid. In light of our conclusion that the amendment does not constitute a retrospective law, we agree that the court must reconsider the validity of those sections.

Moreover, the trial court predicated its legal determinations upon the assumption that the charter amendment was applicable retroactively. The parties agree that the amendment does not and cannot apply to

subsidies or incentives already paid to developers before November 6, 2001. However, on remand, the trial court must determine whether the amendment was intended to apply retroactively as to subsidies and incentives that have been paid since that date or have yet to be paid.

For similar reasons, the trial court's denial of injunctive relief cannot stand, and on remand, the court must reconsider this issue.

The judgment is reversed, and the case is remanded to the trial court to determine whether the charter amendment was intended to apply retroactively to the incentive agreements in this case, to reconsider the claims concerning Ordinance 1590, and to conduct further proceedings consistent with the views expressed in this opinion.

Judge MARQUEZ and Judge ROY concur.