CITY OF GOLDEN, a Colorado municipal corporation; City Council of the City of Golden; Interplaza West Associates, LLP, a Colorado limited liability partnership; Sullivan Three Limited Liability Company, a Colorado limited liability company; Kohl's Department Stores, Inc., a Delaware corporation; Home Depot U.S.A., Inc., a Delaware corporation; Christopher Hall Realty, LLC; Golden Properties, Ltd., a Colorado corporation; GEI–H, LLC, a Colorado limited liability company; GEI–6, LLC, a Colorado limited liability company; Coors Technology Center Owners Association, a Colorado nonprofit corporation; Coors Ceramics Company, Inc., a Colorado corporation; Coors Porcelain Company, a Colorado corporation; Bounce, Inc., a Colorado corporation; Graphic Packaging Corporation of Colorado, Inc., a Colorado corporation; Dada Development, Inc., a Colorado corporation; 16200 Table Mountain Parkway Investors, LLC, a Delaware corporation; and Coors Brewing Co., a Colorado corporation, Petitioners

v.

Donald G. PARKER, Respondent.

No. 05SC282.

Supreme Court of Colorado, En Banc.

June 26, 2006.

Windholz & Associates, James A. Windholz, David S. Williamson, William P. Hayaski, Boulder, Colorado, Attorneys for Petitioners City of Golden and the City Council of the City of Golden.

Senn Visciano Kirschenbaum Merrick, P.C., Frank W. Visciano, Luis A. Toro, Denver, Colorado, Attorneys for Petitioners Interplaza West Associates, LLP, a Colorado limited liability partnership; and Home Depot U.S.A., Inc., a Delaware corporation.

Lottner, Rubin, Fishman, Brown & Saul, P.C., Richard Brown, Denver, Colorado, Attorneys for Petitioner Sullivan Three Limited Liability Company, a Colorado limited liability company.

Rumler, Tarbox, Lyden Law Corporation P.C., James A. Jablonski, Denver, Colorado, Attorneys for Petitioner Kohl's Department Stores, Inc., a Delaware corporation.

Stiner, Back, Jonson & Nolan, LLP, Thomas A. Nolan, Golden, Colorado, Attorneys for Christopher Hall Realty, LLC.

Holme Roberts & Owen, LLP, James C. Ruh, Kary Klismet, Denver, Colorado, Attorneys for Petitioners Golden Properties, Ltd., a Colorado corporation; GEIH, LLC, a Colorado limited liability company; GEI-6, LLC, a Colorado limited liability company; Coors Technology Center Owners Association, a Colorado nonprofit corporation; Coors Ceramics Company, Inc., a Colorado corporation; Coors Porcelain Company, a Colorado corporation; Bounce, Inc., a Colorado corporation; Graphic Packaging Corporation of Colorado, Inc., a Colorado corporation; Dada Development, Inc., a Colorado corporation; 16200 Table Mountain Parkway Investors, LLC, a Delaware corporation; and Coors Brewing Co., a Colorado corporation.

Victor F. Boog & Associates, P.C., Victor F. Boog, Lakewood, Colorado, Attorneys for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I.  Introduction

We granted certiorari to consider whether certain real estate developers (the "Developers") who entered into economic incentive agreements (the "Agreements") with the City of Golden ("Golden") and its City Council had vested rights in those agreements that could not be disturbed by an amendment to Golden's home rule city charter (the "Charter Amendment") enacted subsequent to the Agreements which required, with certain exceptions, voter approval of all new grants of development subsidies or incentives in excess of $25,000.[1]  The court of appeals held that the Developers did not possess vested rights under the Agreements that precluded application of the Charter Amendment to subsidies and incentives paid to the Developers after approval of the amendment.

*Parker v. City of Golden,* 119 P.3d 557 (Colo. App.2005).  We reverse the court of appeals' judgment.

## II.  Facts and Prior Proceedings

In 1992, Golden established an economic incentives program, contained in the Golden Municipal Code at Chapter 18.60, "for commercial, office and manufacturing development, expansion and upgrade, for purposes of the economic revitalization of the community."  G.M.C. § 18.60.010 (2005).  The incentives program authorized the City Council to enter into agreements which provided "development subsidies or incentives" including reimbursement of property taxes for up to seven years, reimbursement of sales and use taxes for up to five years, and waiver or deferment of certain development costs to businesses created or expanded within Golden.  G.M.C. § 18.60.030.

Also in 1992, Colorado voters amended the state constitution, adding article X, section 20 ("Amendment 1").  One of its provisions requires voter approval in advance of the "creation of any multiple-fiscal year direct or indirect district debt or other financial obligation whatsoever."  Colo. Const. art. X, § 20, cl. (4)(b).  In 1995, a proposed multiyear economic incentive agreement with Interplaza West Associates, LLP, one of the Developers, was rejected by Golden's voters.

Without soliciting voter approval, Golden entered into five economic incentive agreements in 1998 and one in 1999 which are the subject of this case.  The Agreements required the Developers to relocate or establish businesses, annex property, and develop their real property in Golden.  In exchange, Golden agreed to share development costs through reimbursement of local property, sales, and use taxes and a waiver of certain development application fees and charges.  All of the Agreements provided that the re-

---

1.  We granted certiorari on two issues, stated as follows:

(1) Whether real estate developers in this case have vested rights in their agreements with the City of Golden that require the City Council, in accordance with the implied covenant of good faith and fair dealing and consistent with the Colorado Constitution, article X, section 20 (Amendment 1, 1992), to exercise its budget discretion annually to pay the monetary compensation provided by those agreements.

(2) Whether the court of appeals erred when it concluded that the developer defendants did not have vested contract rights in agreements that were in place and executory when the initiated Charter Amendment was adopted.

imbursements did not constitute a multiple fiscal year debt or financial obligation and were subject to annual appropriations by the City Council.

On November 6, 2001, Golden's voters approved an amendment to the Golden City Charter, which required that the city obtain voter approval to grant development subsidies or incentives in excess of $25,000 in any one year. Reimbursement of taxes, refunds granted in connection with development, and waiver or deferment of development fees were included under the definition of subsidies or incentives under the amendment. The Charter Amendment did not specify whether it was intended to apply to the Agreements at issue here.

Subsequently, on June 13, 2002, Golden passed Ordinance No. 1590 (the "Ordinance"), which provided in part that "economic development subsidy or incentive agreements in effect on November 6, 2001, shall remain in effect, subject however to the provisions and conditions of each such individual agreement." In July 2002, following the adoption of the Ordinance, Donald G. Parker, a Golden resident and the respondent here, filed a complaint in the trial court challenging Golden's continuing obligation under the Agreements. Parker sought a declaratory judgment and injunctive relief to prevent further appropriations to Developers in excess of $25,000 absent voter approval.

Golden, the City Council, and the Developers (collectively, the "Petitioners") filed a Motion for Summary Judgment which was granted by the trial court. The court determined that the Developers had vested rights to have the City Council exercise reasonable discretion annually in determining whether or not to appropriate funds to reimburse the Developers under the Agreements. The trial court found that retroactive application of the Charter Amendment to the Agreements would violate the prohibition against retrospective law in the Colorado Constitution. Colo. Const. art. II, § 11. The court of appeals reversed the trial court, holding that the Agreements did not confer vested rights upon the Developers. We granted the Petitioners' request for certiorari review and now reverse.

## III. Analysis

■■■■ Under the Colorado Constitution, the General Assembly is prohibited from enacting any law that is "retrospective in its operation. . . ." Colo. Const. art. II, § 11.[2] The prohibition against retrospective laws at the state level applies equally to local government. *City & County of Denver v. Denver Buick, Inc.,* 141 Colo. 121, 140, 347 P.2d 919, 930 (1959), *overruled on other grounds by Stroud v. City of Aspen,* 188 Colo. 1, 532 P.2d 720 (1975). The application of a constitutional standard is a question of law which we review de novo. *City of Greenwood Village v. Petitioners for Proposed City of Centennial,* 3 P.3d 427, 440 (Colo.2000).

### A. Retrospectivity

■■■■ The general prohibition against retrospective legislation is intended to prevent any unfairness that might result from the application of new law to rights already in existence. *In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo.2002). Legislation is presumed to operate prospectively unless there is legislative intent to the contrary. *Id.* Retroactive application of a law, although disfavored, is not necessarily unconstitutional and may be permitted if the law at issue effects a change that is procedural or remedial. *Kuhn v. State,* 924 P.2d 1053, 1056–57 (Colo.

2. The federal Contracts Clause was not properly raised in the proceedings below and, therefore, we do not address it in this opinion. At trial, the defendants' brief in support of their motion for summary judgment, in addition to correctly citing to the Colorado Constitution, mistakenly cited the United States Constitution for the proposition barring retrospective legislation. The trial court repeated this mistake in its order granting summary judgment, even though the substance of the court's opinion confined itself to the Colorado Constitution and did not touch upon the federal issue. As we have pointed out previously, the federal Constitution contains no textual counterpart to the Colorado Constitution's prohibition against retrospective legislation. *Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 12 n. 11 (Colo.1993). Furthermore, given our disposition on the issue of retrospectivity under the state constitution, we do not reach the portion of the court of appeals' opinion addressing impairment of contract under the state and federal constitutions. *See Parker v. City of Golden,* 119 P.3d 557, 564 (Colo.App.2005).

1996). In order to distinguish legislation that is merely retroactive, we use the term "retrospective" only in regard to legislation that "impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6, 16 (Colo. 1993) (citations omitted).

█ We use a two-step inquiry to determine whether or not a law is retrospective in its operation. *DeWitt*, 54 P.3d at 854. First, we look to the legislative intent to determine whether the law is intended to operate retroactively. *Id.* We require a clear legislative intent that the law apply retroactively to overcome the presumption of prospectivity. *Ficarra*, 849 P.2d at 14. However, express language of retroactive application is not necessary to find that a law is intended to apply retroactively. *Id.*

█ If we find intent of retroactive application, the second step of the inquiry is to determine whether the retroactively applied law operates retrospectively. A law is retrospective if it either "(1) impairs a vested right, or (2) creates a new obligation, imposes a new duty, or attaches a new disability . . . ." *DeWitt*, 54 P.3d at 855. We consider each of these prongs of the retrospectivity analysis in turn. In regard to the first prong, we have found that a right is vested only when it has an "independent existence." *People v. D.K.B.*, 843 P.2d 1326, 1331 (Colo. 1993). A vested right may be derived from a statute or the common law, but "once it vests it is no longer dependent for its assertion upon the common law or statute under which it may have been acquired." *Ficarra*, 849 P.2d at 15.

█ We do not employ a fixed formula or a bright-line test for determining whether a right is vested. *Id.* at 17. Rather, we look to three factors: "(1) whether the public interest is advanced or retarded; (2) whether the statute gives effect to or defeats the bona fide intentions or reasonable expectations of the affected individuals; and (3) whether the statute surprises individuals who have relied on a contrary law." *DeWitt*, 54 P.3d at 855.

█ A determination that retroactive application of a law impairs a vested right is not dispositive of the retrospectivity inquiry because such a finding "may be balanced against public health and safety concerns, the state's police powers to regulate certain practices, as well as other public policy considerations." *Id.* Retroactive application of a law that implicates a vested right is only permissible, however, if the law bears a rational relationship to a legitimate government interest. *Id.* In past cases, we have "appl[ied] a balancing test that weighs public interest and statutory objectives against reasonable expectations and substantial reliance." *Kuhn*, 924 P.2d at 1059–60 (quoting *Ficarra*, 849 P.2d at 17).

█ If a vested right is not implicated, we consider the second prong of the analysis. Under this prong, "retrospectivity may result from the creation of a new obligation, imposition of a new duty, or attachment of a new disability with respect to" past transactions or considerations. *DeWitt*, 54 P.3d at 855. Application of a law is not deemed retrospective, however, "merely because the facts upon which it operates occurred before" its adoption. *City of Greenwood Village*, 3 P.3d at 445.

Because we review legislation with the presumption that it is constitutional, *see, e.g., In re Submission of Interrogatories on House Bill 99–1325*, 979 P.2d 549, 554 (Colo.1999), our cases have not often found a law retrospective. However, we have prohibited retrospective application of a statute when the reasonable expectations and substantial reliance of a party vested prior to the enactment of the statute. *Kuhn*, 924 P.2d at 1060 (statute could not be retrospectively applied to defeat attorneys' right to court-ordered reasonable fee paid out of *common fund*).

### B. Application

#### 1. Retroactivity

█ A law is retroactive "when it operates on transactions that have already occurred or on rights and obligations that existed before its effective date." *City of*

*Greenwood Village,* 3 P.3d at 444 (citation omitted).

The factual record lacks evidence on the question of retroactivity. At the trial level, Parker, the drafter of the Charter Amendment, submitted two letters he wrote to the City Council prior to filing his legal claim as evidence that the amendment was intended to apply to the Agreements. These letters are not dispositive of the issue. The Petitioners did not submit any evidence of legislative intent.

The Petitioners contend that the Charter Amendment may not apply to the Agreements as a matter of law and that any such application would be retroactive and unconstitutionally retrospective. The economic incentives at issue, the Petitioners argue, were all "granted" when the Agreements were executed in 1998 and 1999. Additionally, the Petitioners assert that the City Council's adoption of Ordinance No. 1590 clarifies that the Charter Amendment should not be applied to the existing Agreements.

Respondent Parker argues that the Developers have no vested rights which could be impaired by application of the Charter Amendment to the subsidies and incentives granted under the Agreements. Moreover, Parker argues that because payments under the Agreements are subject to discretionary annual appropriations, each annual appropriation is a new "grant" of incentives under the Charter Amendment. He contends that the Charter Amendment was intended to apply to any payments of subsidies or incentives over $25,000 made after November 6, 2001, and that such application is prospective, not retroactive. Therefore, according to Parker, the Ordinance is unconstitutionally void because it circumvents the plain language of the Charter Amendment.

The trial court and the court of appeals both assumed for the purposes of their analyses that the Charter Amendment was intended to apply retroactively. *Parker,* 119 P.3d at 561. Because the question we face is whether or not vested rights were created by the Agreements, we also assume the retroactive intent of the amendment to apply to contracts already in existence.

## 2. Vested Rights

The Petitioners contend that the Developers have a vested right in the City Council's exercise of its discretion in considering whether to make annual appropriations under the Agreements. They concede that the Developers do not have a right under the Agreements to payment in any particular year. As noted above, the Agreements were specifically written to avoid creation of a multiple year financial obligation that would have violated article X, section 20 of the state constitution. Rather, the Petitioners argue that the Developers have vested nonfinancial rights and obligations derived from the duty of good faith and fair dealing. According to the Petitioners, application of the Charter Amendment to the Agreements will interfere with the City Council's duty to exercise its good faith discretion, depriving the Developers of their reasonable expectation of reliance on that exercise of discretion.

Further, the Petitioners assert that each of the Agreements provided the Developers with the right to "earn back" the expenses of development subject to a maximum amount of reimbursement during the life of each contract which was not reduced by non-appropriation in any one year. The Developers invested significant funds into public improvements in reliance on the terms of the Agreements. In every instance, the right to "earn back" these expenses under the Agreements extended beyond 2001.

Parker argues that the Developers did not have vested rights in the Agreements for several reasons. He contends that because any payments made under the Agreements are subject to discretionary annual payments, the Developers have no reasonable expectation of payment in any particular year that could be disturbed by application of the Charter Amendment. According to Parker, the language in the Agreements that allows them to comply with Amendment 1 and avoids a multiple year debt or financial obligation also results in the surrender of all remedies the Developers may have had against Golden for non-appropriation of funds in any one year. Finally, Parker argues that language in the Agreements pre-

venting the formation of "vested property rights" precludes the formation of any vested rights under the contracts.

The trial court found that the Developers had a right to have the City Council, due to its implied duty of good faith and fair dealing, exercise its discretion in good faith when considering the yearly appropriation of "earn back" expenses. The court employed the three factors stated in *DeWitt* to find that: (1) the interest of the public was advanced by the economic incentives in the Agreements; (2) retroactive application of the Charter Amendment to the Agreements defeated the bona fide intentions of the parties; and (3) retroactive application would unfairly surprise Golden and the Developers who had relied on the enforceability of the Agreements. The court of appeals reversed the trial court ruling, finding that the Agreements did not create vested rights based on their language precluding financial obligations beyond one year under Amendment 1 and prohibiting the formation of vested property rights. The court of appeals characterized the Developers' interest as a "mere expectation or hope" of payment, completely dependent on an uncertain event. *Parker,* 119 P.3d at 562.

### a. Implied Duty of Good Faith and Fair Dealing

Under Colorado law, every contract contains an implied duty of good faith and fair dealing. § 4–1–203, C.R.S. (2005); *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995). A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract. *Cary v. United of Omaha Life Ins.,* 68 P.3d 462, 466 (Colo.2003).

The good faith performance doctrine attaches to contracts "to effectuate the intentions of the parties or to honor their reasonable expectations." *Amoco Oil Co.,* 908 P.2d at 498. The duty of good faith and fair dealing may be relied upon "when the manner of performance under a specific contract term allows for discretion on the part of either party." *Id.* Discretion in performance occurs "when the parties, at formation, defer a decision regarding performance terms of the contract" leaving one party with the power to set or control the terms of performance after formation. *Id.*

The Petitioners represent that determining whether to make budgetary appropriations is left to the discretion of Golden's City Council. Chapter XI of the Golden Home Rule Charter invests the City Council with the duty to adopt an annual budget and budgetary appropriations therein. Section 6.1 of the Charter grants Golden's voters the power to propose any ordinance to the City Council, "except [those concerning] budget, capital program, appropriation or levy of taxes or salaries of city officers or employees."

Public officials given a duty involving discretion may abuse that discretion if they fail to exercise it. *See, e.g., Lamm v. Barber,* 192 Colo. 511, 517, 565 P.2d 538, 542 (1977); *People v. McNichols,* 91 Colo. 141, 143, 13 P.2d 266, 267 (1932); *Moody v. Larsen,* 802 P.2d 1169, 1171–72 (Colo.App.1990), *superseded by statute on other grounds,* Ch. 131, sec. 12, § 16–5–209, 2000 Colo. Sess. Laws 451, 454, *as recognized in Schupper v. Smith,* 128 P.3d 323 (Colo.App.2005). When a public officer fails to exercise duty-bound discretion, "[c]ourts ... will direct an officer to proceed and exercise the discretion vested in him by law." *McNichols,* 91 Colo. at 143, 13 P.2d at 267. Under Colorado law, the City Council could be expected to exercise its budgetary discretion, regardless of whether the manner of that exercise was favorable to the Developers.

Each of the Agreements provides that reimbursement for development costs are subject to annual appropriations by the City. The respective Developers chose to locate new businesses or to expand on existing ones in Golden based on contractual assurances that the City Council would exercise its discretion annually in appropriation of city funds for reimbursement of their development expenses. Included in these expenses were public improvements and infrastructure necessary to development, such as construction of sewage lines. Based on the language of the Agreements, Golden's Home Rule City Charter at the time of contracting, and Golden's implied duty of good faith and fair dealing, the Developers had a reasonable expec-

tation that the City Council would exercise its budgetary discretion in determining whether to appropriate funds annually.

The court of appeals found that the implied duty of good faith and fair dealing in the performance of a contract could not confer a vested right on the Developers because a vested right has an independent existence and the statutory duty of good faith and fair dealing is a product of the common law. *Parker*, 119 P.3d at 563. This interpretation of vested contractual rights was in error. The court cited *Ficarra* for the proposition that a vested right must have an independent existence. *Parker*, 119 P.3d at 563. However, in *Ficarra* we also stated that a vested right may originate from a statute or the common law and it is only "once it vests that it is no longer dependent for its assertion upon the common law or statute under which it may have been acquired." 849 P.2d at 15. Our analysis in *Ficarra* in no way indicates that a vested right cannot originate from the common law.

▪▪▪ Rather, a right is vested if it survives "the repeal of a statute or the abrogation of the common law from which [it] may have originated." *Id.* at 15–16. A vested right "must be a contract right, a property right, or a right arising from a transaction in the nature of a contract which has become perfected to the degree that it is not dependent on the continued existence of the statute" or common law. 1A Norman J. Singer, *Sutherland Statutory Construction* § 23.35 (6th ed.2002). The Developers' reasonable expectations here may have derived from the common law duty of good faith and fair dealing, but their rights to the City Council's exercise of discretion arose from the Agreements, and were therefore independent of the common law.

### b. *DeWitt* Analysis

▪▪▪ We now turn to the *DeWitt* factors to determine whether application of the Charter Amendment to the Agreements implicates a vested right of the Developers.

First, we consider whether the public interest is advanced or retarded by retroactive application of the Charter Amendment. *DeWitt*, 54 P.3d at 855. Golden's economic incentives program was enacted to advance the public interest in business "development, expansion, and upgrade, for purposes of the economic revitalization of the community." G.M.C. § 18.60.010 (2005). The program anticipated that offering economic incentives and the consequent development would increase annual city revenues through enhancement of the tax base and the receipt of direct revenues generated by development related charges. *See* G.M.C. § 18.60.030(2). By their terms, the Agreements contemplate the generation of revenue to Golden, a portion of which the Developers are permitted to "earn back" in future years. The program also encouraged development within the city, discouraging urban sprawl.

A countervailing consideration is the voters' interest in limiting public expenditures, which likely motivated the passage of the Charter Amendment. The Amendment ensures that the majority of Golden's electorate supports any city expenditure of more than $25,000 to promote business development. However, application of the Amendment to contracts made prior to its enactment retards the public interest by preventing the city from honoring its commitments.[3] While prospective application of the Charter Amendment promotes the public interest of limiting future public expenditures, retroactive application to the Agreements serves only to relieve the City Council of the duty of exercising its discretion in fulfillment of its contractual obligations.

The Agreements contemplate reimbursement for development costs subject to the discretion of the City Council, not the voters. Because Golden entered into the Agreements for the advancement of the public interest and because the public interest is best served by honoring the city's contractual commit-

---

3. The fact that the contractual obligations of the government, rather than a private party, are at issue is significant. The Supreme Court has noted that under the federal Contracts Clause "impairments of a State's own contracts would face more stringent examination ... than would laws regulating contractual relationships between private parties." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 n. 15, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).

ments, we find that the public interest would be retarded by retroactive application of the Charter Amendment to the Agreements.

Second, we look to whether the Charter Amendment gives effect to or defeats the bona fide intentions or reasonable expectations of the parties. *DeWitt,* 54 P.3d at 855. As discussed above, the Developers have a reasonable expectation that the City Council will exercise its budgetary discretion in determining whether or not to appropriate funds for reimbursement under the Agreements. It is also undisputed that the bona fide intentions of Golden and the Developers were to condition reimbursement of the development expenses on the annual appropriations process. Application of the Charter Amendment to the Agreements would defeat the expectations and intentions of both parties.

Third, we examine whether the Charter Amendment surprises the Petitioners due to their reliance on contrary law. *Id.* As discussed below, the Agreements were specifically tailored to comply with Amendment 1, in accordance with *Board of County Commissioners of the County of Boulder v. Dougherty,* 890 P.2d 199 (Colo.App.1994), *overruled on other grounds by In re Submission of Interrogatories on House Bill 99–1325,* 979 P.2d 549 (Colo.1999). The parties relied on prior law addressing Amendment 1 for the enforceability of the contracts. Furthermore, as discussed above, the parties relied upon the City Council's responsibility and sole discretion in making annual budget appropriations as provided in the Golden City Charter. Therefore, retroactive application of the Charter Amendment would effect a surprise on the parties. *See DeWitt,* 54 P.3d at 855.

We find all three of the *DeWitt* factors for implication of a vested right are met by application of the Charter Amendment to the Agreements here. Additionally, we find no overriding public policy concerns that would justify retroactive application of the Charter Amendment to agreements entered into by the City of Golden that were already in existence at the time the Amendment was enacted. To the contrary, we find that the application of the Charter Amendment to the

Agreement would frustrate the reasonable expectations and substantial reliance of the Developers in this case. *See Kuhn,* 924 P.2d at 1060.

### c. Compliance with Amendment 1's Restriction on Multi-year Financial Obligations

The parties disagree as to whether the contractual limitations the Petitioners adopted to comply with Amendment 1 precluded the establishment of any vested contractual rights over the life of the Agreements. Parker's argument is essentially that either the terms of the Agreements prevented the creation of vested contractual rights that could be disturbed by the Charter Amendment or that such rights, if they existed, would unconstitutionally violate Amendment 1. The Petitioners claim that *Dougherty* and *Interrogatories on HB 99–1325,* both of which examined Amendment 1's prohibition on multiple year financial obligations, permit formation of multiple year nonfinancial obligations, as provided in the Agreements here.

In *Dougherty,* the court of appeals examined whether a lease-purchase agreement for a road grader between the county of Boulder and an investment banking firm constituted a "multiple-fiscal year direct or indirect district debt or other financial obligation" under Amendment 1. 890 P.2d at 201. The lease-purchase agreement provided for an initial eight month term with four additional one-year renewal terms. The court of appeals found that the agreement did not create a multiple fiscal year financial obligation because it did not require that funds be appropriated in any single year. *Id.* at 207.

The investment banking firm in *Dougherty* argued that the lack of a future financial obligation in the lease-purchase agreement was a matter of form rather than substance because the county had the intent to make payments every year until the conclusion of the agreement. *Id.* The court of appeals held that even were such intent present, the fact that nonpayment was a distinct possibility under the agreement distinguished it from

a multiple year financial obligation.[4]  *Id.*

We examined the court of appeals' analysis in *Dougherty* in *Interrogatories on HB 99–1325.   See* 979 P.2d at 556–57.  We found that the "lease-purchase agreement was not a financial obligation requiring voter approval because it did not entail the borrowing of funds or pledge the credit of the State."  *Id.* at 557.  We distinguished that contract from the revenue anticipation notes ("RANs") that were the subject of the interrogatories because in the RANs "it [was] evident that the State [was] receiving money in the form of a loan" that came within the scope of "other financial obligation whatsoever" in Amendment 1. *Id.* at 557–58.  Further, we held that merely because a payment obligation is discretionary beyond its first year does not dictate that it is outside the scope of Amendment 1. *Id.* at 558.  To determine whether a "multiple-year fiscal obligation" is implicated, "the entire obligation must be looked at as a whole."  *Id.*

The payment obligations of the proposed RANs were likely to extend into multiple years and therefore the RANs were within Amendment 1 because the State had to pledge its credit for the notes to be marketable.  *Id.* In order to sell the notes, the State had to create a security interest that would likely extend beyond one year.  *Id.* We noted that when Amendment 1 was presented to the voters "they were told that it would require voter approval for the creation of most financial obligations that extend beyond the current fiscal year unless government sets aside enough money to fund the obligation in all years that payments are due."  *Id.* (citation omitted).  Consequently, when the entire transportation budget for the year was approximately $585 million, the voters could reasonably expect to have the issuance of $1.0 billion in transportation RANs submitted to them.  *Id.* at 558–59.

By contrast, looking at all of the economic realities and circumstances created by the Agreements here, there is no obligation that Golden make payments to the Developers in any single year.  Much like the positions of the parties in *Dougherty,* Golden may well have contracted with the intent to make appropriations under the Agreements every year and the Developers may well expect to receive reimbursement payments every year, but ultimately the language of the Agreements leaves the matter to the discretion of the City Council.  Nothing in the Agreements prevents the City Council from exercising its discretion to decline to appropriate funds.  Moreover, the Agreements contemplate reimbursement only for an incremental portion of the tax revenues generated from the developed property.  Due to this provision, the Agreements are not contingent on the borrowing of funds, the extension of Golden's credit, or any payments for which funds are unavailable.

Consistent with our holding in *Interrogatories on HB 99–1325* and the court of appeals' holding in *Dougherty,* we find that the Agreements do not create a "multiple-fiscal year direct or indirect district debt or other financial obligation" as defined by Amendment 1. For reasons stated elsewhere in this opinion, we reject Parker's argument that the terms of the Agreements which allowed them to comply with Amendment 1 prevented the vesting of nonfinancial contractual rights.

### d.  Restrictions on the Formation of Vested Property Rights

The court of appeals found that language in the Golden Municipal Code and certain of the Agreements that precludes the creation of vested property rights negates a claim to vested contractual rights derived from the Agreements.  *Parker,* 119 P.3d at 562.  The court equated "property rights" with "con-

---

4.  In *Dougherty,* the lease-purchase agreement provided that the agreement would be terminated in the event of non-appropriation in any one year.  *Bd. of County Comm'rs of the County of Boulder v. Dougherty,* 890 P.2d 199, 202 (Colo. App.1994).  However, that case does not stand for the proposition that agreements subject to annual appropriations are unenforceable beyond

one year.  The Agreements at issue here do not contain termination clauses upon the event of non-appropriation.  On the contrary, the language of the Agreements contemplates that the Developers could continue to "earn back" reimbursements during the life of the contract, whether or not appropriation is made in any one year.

tract rights," finding no distinction between the two in this context. *Id.*

The Golden Municipal Code provides that "[n]o vested right or other such property interests or rights shall be granted or impliedly conferred upon any person or entity" by the economic incentives program. G.M.C. § 18.60.080. In addition, three of the Agreements contain language that precludes the creation of vested rights to property. Parker argues that the language in the Code and some of the Agreements is contrary to the Petitioners' claim that the Agreements created vested contract rights.

The Petitioners argue that "vested property rights" as used in the Agreements and in the Code is a term of art and refers to the state statutory scheme by which a landowner may obtain a vested property right in land from local governments. §§ 24–68–101 to –106, C.R.S. (2005). Under the statutory scheme, a "vested property right" is defined as "the right to undertake and complete the development and use of property under the terms and conditions of a site specific development plan." § 24–68–102(5). The Golden Municipal Code provides procedures by which vested property rights are granted under a site specific development plan, in accordance with the state statutory scheme. G.M.C. §§ 18.66.010 to –080.

Petitioners also point to the agreement with Golden Properties, Ltd., which grants the developer vested property rights and limits the city's ability to modify zoning of the subject property, as evidence that the Agreements were entered into in contemplation of the state statutory scheme. The Golden Properties agreement states that "this Agreement shall be deemed to be a development agreement within the meaning of [section] 24–68–104" which provides for the duration and termination of vested property rights granted by local governments. § 24–68–104.

We find the Petitioners' argument persuasive. We construe words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, accordingly. § 2–4–101, C.R.S. (2005); *e.g., Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1054 (Colo.1995). Both the economic incentives program and the vested property rights section appear in the Golden Municipal Code in the chapter concerned with city planning and zoning. Parker has not presented a compelling reason to interpret "vested property rights" other than by its statutory definition and in the context of the state statutory scheme. Furthermore, use of the statutory meaning of "vested property rights" is consistent with the language of the Agreements.

Therefore, we hold that the court of appeals erred in equating vested contract rights with the vested property rights prohibited by the economic incentives program and certain of the Agreements. The prohibitions on the creation of vested property rights did not preclude creation of vested contractual rights.

## IV. Conclusion

For the foregoing reasons, we find that the court of appeals erred in its determination that the Developers did not have a vested right that was disturbed by the adoption of the Charter Amendment. We reverse the holding of the court of appeals and remand the case with directions to return it to the district court.

Justice EID dissents, and Justice COATS joins in the dissent.

Justice EID dissenting:

In the Agreements at issue in this case, the Golden City Council promised that it would consider the Developers' request for payment—nothing more. Because this promise falls far short of a "vested right," the Golden Charter Amendment subjecting such payments to a vote of the people is not unconstitutionally retrospective. I respectfully dissent.

Significantly, the majority acknowledges that the Developers have no "vested right" under the Agreements "to payment in any particular year." Maj. op. at 291. That is because, as the majority points out, the Agreements were written specifically to avoid the Colorado Constitution's requirement of voter approval for the "creation of

any multiple-fiscal year direct or indirect district debt or other financial obligation whatsoever." Colo. Const. art. X, § 20, cl. (4)(b) ("Amendment 1"); maj. op. at 291. If the Agreements do not create multi-year fiscal obligations under Amendment 1, they do not create such obligations for purposes of the retrospectivity analysis either.

The majority seems to concede this analysis, but concludes that the Developers have a *non-fiscal* vested right in the Agreements—namely, the "reasonable expectation that the City Council would exercise its budgetary discretion in determining whether to appropriate funds annually." Maj. op. at 292–93. One might question whether this right to the exercise of the City Council's discretion is actually the right the Developers seek to protect; as the court of appeals noted, the ultimate goal of the Developers is to receive payment, which is clearly not a "vested right" under the Agreements. *See Parker v. City of Golden,* 119 P.3d 557, 563 (Colo.App. 2005). But even if the majority's description of the "right" in question is accurate, it simply does not qualify as "vested" under our jurisprudence.

Petitioners are claiming a vested right in the Council's ability to exercise its discretion to approve payment to the Developers without a vote of the people. But this "right" to voter-free Council discretion is nowhere found in the language of the Agreements. On the contrary, the language of several of the Agreements tracks the language of a Golden ordinance providing that "[n]o vested property right or other such property interests or rights shall be granted or impliedly conferred upon any person or entity" through the economic incentives program. G.M.C. § 18.60.080. The majority downplays the effect of this language by stating that it pertains only to planning and zoning. *See* maj. op. at 296. But a more common-sense reading of the language is that the Golden City Council at the time the Agreements were made wanted to protect itself from the very sort of "vested right" claims that the Developers raise in this case.

Nor could the Council even promise voter-free discretion, for the Council's discretion to appropriate funds was always subject to change through voter initiative.[1] Moreover, as the majority acknowledges, the Agreements were made after the Golden voters had rejected a proposed multi-year economic incentives package with one of the Developers in this case. *See* maj. op. at 288. Under these circumstances, the Developers' claim of thwarted expectations in voter-free appropriations is at best dubious.

The majority proceeds to find a vested right to voter-free Council discretion in the covenant of good faith and fair dealing, *see* maj. op. at 292–93, which "applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo.1995). We held in *Amoco* that the duty requires parties to act in good faith when exercising their contractual discretion. *See id.* But the good-faith exercise of contractual discretion is an entirely separate question from whether such discretion can be limited by the voters when their government contracts with a private party. On this question—which is the central question in this case—our precedents applying the implied covenant are inapplicable.

Even if the implied duty of good faith were applicable to this case, the majority fails to explain how it has been violated. The majority believes that the Developers "had a reasonable expectation that the City Council would exercise its budgetary discretion in determining whether to appropriate funds annually." Maj. op. at 292–93. But there is no claim that the Council somehow exercised its discretion in bad faith, as would be the case if payments were due under the Agreements' formula and the Council refused to pay them. The duty of good faith and fair dealing requires that discretion be exercised in good faith; it does not guarantee that a

---

1. The Petitioners acknowledge that the Council's "authority to appropriate funds to grant economic subsidies or incentives is subject to the restrictions of the Charter Amendment." Pet.'s Reply Brief at 13. They simply challenge the constitutionality of the Charter Amendment's application to their Agreements.

particular form of government discretion will be insulated from voter change.[2]

At bottom, the Developers claim to have a vested right to a particular method of government decision-making. We define such interests in "remedies or modes of procedure" as "procedural," and we have repeatedly stated that there can be no vested right "where the statute effects a change that is procedural" in nature. *In re Estate of De-Witt,* 54 P.3d 849, 854 n. 3, 854 (Colo.2002); *see also People v. D.K.B.,* 843 P.2d 1326, 1331–32 (Colo.1993) (finding that a statute repealing a certain procedure for sealing arrest and criminal records did not impair a "vested right"). The reason for this is plain. Government must have a certain amount of flexibility with regard to the procedures it follows. Under the majority's logic, once a government entity enters into a contract with a private party, its budgeting process is frozen in place and cannot be changed with regard to that party. Although this case arises in the context of a voter initiative, its logic would apply to *any* change in the governmental budgeting process—voter-initiated or not. Nothing in the Colorado Constitution requires such a result.

The majority acknowledges that the Charter Amendment need only be supported by "a legitimate government interest" to survive a retrospectivity challenge. Maj. op. at 290. Moreover, it goes on to identify that interest in this case—"limiting public expenditures." *Id.* at 293. Indeed, as the majority points out, "prospective application of the Charter Amendment promotes the public interest of limiting future public expenditures." *Id.* at 293. Ironically, this is precisely what Respondent Parker is arguing in support of the Amendment's constitutionality: that application of the Charter Amendment's requirement of voter approval for payments over

$25,000 made to the Developers in the future will keep down public expenditures.[3] *See* maj. op. at 291, 293 (characterizing Respondent's argument).

Despite its recognition of the legitimate government interest supporting the Charter Amendment, the majority goes on to find that the interest is outweighed by the significant benefits of Golden's economic incentives program. *See id.* at 293. It applauds the city's initiative in "encourag[ing] development" and "discouraging urban sprawl." *Id.* at 293. The majority also places a premium on the need for Golden to "honor[ ] its commitments," *id.* at 293–94, though this begs the question of whether those commitments constitute a "vested right" in the first place. The majority's application of rational basis review bears little resemblance to "the most deferential standard of judicial review." *Parrish v. Lamm,* 758 P.2d 1356, 1370 (Colo. 1988).

Because the City Council's promise to consider payment to the Developers does not confer any "vested right" upon them, the Charter Amendment subjecting such payments to voter approval is not unconstitutionally retrospective. I respectfully dissent.

I am authorized to state that Justice COATS joins in this dissent.

---

**2.** The majority relies on *People v. McNichols,* 91 Colo. 141, 143, 13 P.2d 266, 267 (1932), for the proposition that "[c]ourts ... will direct an officer to proceed and exercise the discretion *vested in him by law."* Maj. op. at 292 (emphasis added). The point here is that, after the passage of the Charter Amendment, the City Council was no longer "vested" with the "discretion ... by law" free from voter approval of payments over $25,000.

**3.** The majority assumes that the Charter Amendment applies retroactively to the Agreements in question, on the ground that the trial court and court of appeals made such an assumption. *See* maj. op. at 291. Under my analysis, it does not matter whether the Charter Amendment applies prospectively or retroactively because the Agreements contain no "vested right" to be impaired by the Amendment.