2013 COA 129

**Kathleen HICKMAN and Earl Hickman, Plaintiffs–Appellees,**

v.

**CATHOLIC HEALTH INITIATIVES, d/b/a St. Anthony Hospital, Defendant–Appellant.**

Court of Appeals No. 13CA0939

Colorado Court of Appeals, Div. A.

Announced August 29, 2013

Jefferson County District Court No. 13CV238, Honorable Margie L. Enquist, Judge

LeHouillier & Associates, P.C., Patric J. LeHouillier, Benjamin P. Gifford, Colorado Springs, Colorado, for Plaintiffs–Appellees

Kennedy Childs, P.C., Barbara H. Glogiewicz, Ronald H. Nemirow, Sara C. Sharp, Denver, Colorado, for Defendant–Appellant

Kutak Rock LLP, Mark L. Sabey, Denver, Colorado, for Amicus Curiae Colorado Hospital Association

## ORDER AFFIRMED AND CASE REMANDED WITH DIRECTIONS

### Opinion by JUDGE WEBB

¶ 1 Since 1989, Colorado hospitals have been statutorily immune "from damages in any civil action brought against [them] with respect to ... peer review proceeding[s]." *Kauntz v. HCA–Healthone, LLC*, 174 P.3d 813, 817 (Colo.App.2007). Section 12–36.5–203(2), C.R.S.2012 (current statute), abrogated this immunity as to credentialing decisions. In this interlocutory appeal under C.A.R. 4.2, defendant, Catholic Health Initiatives, doing business as St. Anthony Hospital (hospital), asserts that the current statute does not apply because the credentialing decision and injury at issue occurred before the statute's effective date, although the action was filed after that date.

¶ 2 The plain language shows that the General Assembly clearly intended the current statute to apply retroactively. We conclude that such application is not unconstitutionally retrospective. Therefore, because the current statute applies, the trial court correctly rejected the hospital's assertion of immunity.

### I. Facts

¶ 3 In 2011, Kathleen Hickman sustained a knee injury. She sought treatment from a physician who was credentialed to practice as a vascular surgeon at the hospital. Allegedly as a result of the physician's failure to diagnose and treat a circulatory problem, Ms. Hickman's leg was amputated on November 18, 2011.

¶ 4 Ms. Hickman and her husband sued the hospital and the physician on January 23, 2013.[1] The sole claim against the hospital was for negligent credentialing. The hospital moved to dismiss, arguing that under Ch. 113, sec. 1, § 12–36.5–203, 1989 Colo. Sess. Laws 687–88 (former statute), it was immune from damages. Plaintiffs responded that the

current statute, effective July 1, 2012, controlled, removing the prior immunity.

¶ 5 The trial court denied the hospital's motion. It concluded that the General Assembly had intended the current statute to apply retroactively, and such application was not unconstitutionally retrospective under Article II, section 11 of the Colorado Constitution.

### II. Standard of Review

¶ 6 "C. R.C.P. 12(b)(5) motions to dismiss test the complaint's legal sufficiency to determine whether the plaintiff has asserted a claim for which relief may be granted." *State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9, 12 (Colo.App.2009). Rulings on such motions are reviewed de novo, *id.* as are determinations of immunity. *N. Colo. Med. Ctr., Inc. v. Nicholas*, 27 P.3d 828, 838 (Colo.2001). Appellate courts "also review de novo the question of whether a statute is constitutional ... as applied." *People v. Herdman*, 2012 COA 89, ¶ 14 (citation omitted).

### III. Discussion

¶ 7 Deciding whether the current statute applies involves a two-stage inquiry. First, we must determine whether the plain language evinces "a clear legislative intent that the law apply retroactively." *City of Golden v. Parker*, 138 P.3d 285, 290 (Colo.2006). If so, then we must determine whether retroactive application violates the constitutional prohibition against "retrospective" application of statutes.[2] *Id.* Addressing each step in turn, we agree with the trial court.

### A. The General Assembly Clearly Intended Retroactive Application

#### 1. Law

¶ 8 Generally, "[a] statute is presumed to be prospective in its operation." § 2–4–202, C.R.S.2012; *see City of Golden*, 138 P.3d at 289. "Nevertheless, where the

---

1. Only the hospital sought interlocutory review.

2. *See Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6, 12 (Colo.1993) ("[U]nder our state constitution, some retroactively applied civil legislation is constitutional, and some is not, and it is help-

ful to mark this distinction by using the term *retrospective* to apply only to legislation whose retroactive effect violates the constitutional prohibition.").

plain language of an act shows a clear legislative intent that it be applied retroactively, such language is sufficient to overcome the presumption." *In re Estate of Becker*, 32 P.3d 557, 560 (Colo.App.2000), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849, 861 (Colo.2002). However, this intent "need not be explicitly expressed in the legislation." *Shell W. E & P, Inc. v. Dolores Cnty. Bd. of Commis.*, 948 P.2d 1002, 1012 (Colo.1997). But merely providing an effective date is insufficient to show retroactive intent, as we presume that a statute "operates on transactions occurring after its effective date." *Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 977 (Colo.App.2004).

¶ 9 Inquiry into legislative intent begins with the language of the statute. *McKinney v. Kautzky*, 801 P.2d 508, 509 (Colo.1990). "Where the legislative intent is clear from the statutory language, we need look no further, and we may not depart from it. Rather, if statutory language is plain and its meaning clear, it must be applied as written." *Andrew v. Teller Cnty. Bd. of Equalization*, 2012 COA 104, ¶ 15, 284 P.3d 172 (citation omitted).

## 2. Analysis

¶ 10 Because the allegedly negligent credentialing and amputation occurred before July 1, 2012, the trial court applied the current statute retroactively. *See Ficarra v. Dep't of Regulatory Agencies*, 849 P.2d 6, 11 (Colo.1993) (A statute is applied retroactively "when it operates on transactions that have already occurred."). For the following reasons, retroactive application is required by the effective date clause, which states that the pertinent subsection, as amended, "applies to actions filed on or after July 1, 2012." § 12–36.5–203(2)(c), C.R.S.2012.

¶ 11 *Black's Law Dictionary* 704 (9th ed.2009),[3] defines the verb "file" as "[t]o deliver a legal document to the court clerk … for placement into the official record," or "[t]o commence a lawsuit." And an "action" is "a civil or criminal judicial proceeding." *Id.* at 32. These two words, read together, state the statute's effective date in terms of legal proceedings rather than the occurrence of any underlying event.[4] *Cf. Vetten v. Indus. Claim Appeals Office*, 986 P.2d 983, 985 (Colo.App.1999) (concluding that the statute of limitations at the time the petition was filed controls, rather than the statute of limitations in force at the time of injury, because the amended statute "expressly applies to petitions to reopen *filed* on or after July 1, 1988," and the petition was "*filed* after that date" (emphasis added)).

¶ 12 This language necessarily requires retroactive application of the statute because "for an action to be 'filed' *on* [the effective date], it must have accrued *prior* to that date." *Martin by Scoptur v. Richards*, 192 Wis.2d 156, 531 N.W.2d 70, 88 (1995) (emphasis added). For this reason, courts in other jurisdictions have concluded that such language shows clear legislative intent to apply the statute retroactively.[5] The hospital cites no contrary authority involving an effective date clause phrased in terms of "actions filed" or similar wording.

¶ 13 Further, had the General Assembly intended to apply the current statute only to

3. *See People v. Holwuttle*, 155 P.3d 447, 450 (Colo.App.2006) (describing *Black's Law Dictionary* as a source of "the most widely accepted legal meaning" of undefined terms).

4. We "presume[ ] that the legislature has knowledge of the legal import of the words it uses and that it intends each part of a statute to be given effect." *Alley v. City of Evans*, 124 P.3d 911, 913 (Colo.App.2005).

5. *See, e.g., Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 717 P.2d 434, 441 (1986) ("There can be little dispute that the legislature … intended that the Act, 'by its terms, [apply] retroactively to accidents occurring before the effective date of the statute.' Section 3 of the Uniform Act provides in pertinent part that '[t]he provisions … only apply to actions *filed* on or after the effective date of this act.'…. If the legislature had intended for the Act to apply only to actions *accruing* rather than filed after its effective date, it would have so provided."); *State ex rel. Carpenter v. Indus. Comm'n*, 50 Ohio St.3d 85, 552 N.E.2d 645, 646 (1990) ("The operative date for judging retroactivity is the date the intentional tort action was filed, not when the tort allegedly occurred," because the governing statute by its terms applies to "all claims or actions filed on or after the effective date."); *Martin*, 531 N.W.2d at 88 ("It is clear that the legislature intended the cap to be given retroactive effect…. The cap applies to actions 'filed on or after June 14, 1986.'").

injuries occurring on or after July 1, 2012, as the hospital asserts, "it could have easily added specific language to do so, as it has elsewhere." *In re Marriage of Tognoni*, 313 P.3d 655, 660, 2011 WL 5436480 (Colo.App. No. 10CA1138, Nov. 10, 2011); *see, e.g., Golden Animal Hosp. v. Horton*, 897 P.2d 833, 836 (Colo.1995) (concluding that "[t]he plain meaning" of a statute made effective July 1, 1991, and applying "to injuries occurring on or after said date" is that the statute "applies only to injuries occurring on or after July 1, 1991"); *Nye v. Indus. Claim Appeals Office*, 883 P.2d 607, 609 (Colo.App.1994) (noting that ch. 67, sec. 14, 1989 Colo. Sess. Laws 415, which said that the statute at issue applied to "all claims ... for injuries occurring on or after" the effective date, made the statute "expressly ... applicable to all claims for injuries occurring on or after that date").

¶ 14 Similar reasoning disposes of the hospital's assertion that the current statute does not apply to a credentialing decision made before its effective date. The effective date clause could have addressed "actions filed based on credentialing decisions that occurred on or after." Further, an action for personal injury accrues when both "the injury and its cause" are or should be known. § 13–80–108(1), C.R.S.2012. Thus, if an action based on negligent credentialing could have been filed on July 1, 2012, the statute necessarily would apply to credentialing that occurred earlier. But under the hospital's interpretation, a hospital would be forever immune from damages based on a credentialing decision that occurred before that date.

▪ ¶ 15 Nevertheless, the hospital argues that the General Assembly did not intend the statute to apply retroactively because the effective date appears in section 12–36.5–203(2)(c), but the provision abrogating immunity is found in section 12–36.5–203(2)(a), C.R.S. 2012. However, the effective date explicitly applies to "[t]his subsection (2), as amended." § 12–36.5–203(2)(c). A

court does not interpret clauses in isolation, but rather in "the broader context of the statute as a whole.... to give consistent, harmonious and sensible effect to all of its parts." *Curtis v. Hyland Hills Park & Recreation Dist.*, 179 P.3d 81, 83 (Colo.App. 2007) (internal citations and quotations omitted).[6]

▪ ¶ 16 Therefore, we conclude that the language of the current statute clearly shows the General Assembly's intent to apply it retroactively.[7]

## B. Retroactive Application is not Unconstitutionally Retrospective

▪ ¶ 17 Initially, we address the hospital's argument that the current statute is retrospective because applying it retroactively is "unfair." The supreme court has used this general principle to illuminate retrospectivity. *See, e.g., Van Sickle v. Boyes*, 797 P.2d 1267, 1271 (Colo.1990) ("The purpose of the constitutional ban of retrospective legislation, like the ban on ex post facto laws, is to prevent the unfairness that results from changing the legal consequences of an act after the act has occurred."). However, the supreme court has also held that retroactive application of a statute may be constitutional "even if a party is disadvantaged by the change." *People v. D.K.B.*, 843 P.2d 1326, 1332 (Colo.1993).

▪ ¶ 18 By its nature, retroactive application of a statute involves a degree of unfairness, as the legal consequences of an act have been altered after the fact. Were this sufficient to render a statute unconstitutional, then retroactive application would be unconstitutional in most cases. But "the retroactive application of a civil statute is not necessarily unconstitutional." *Ficarra*, 849 P.2d at 11 (footnote omitted). Rather, a statute is retrospective, and therefore uncon-

---

6. Neither the hospital nor plaintiffs cite legislative history to support their interpretations of the statute. And in any event, "clear and unambiguous language eliminates the need to resort to other principles of statutory construction such as legislative history." *People v. J.J.H.*, 17 P.3d 159, 162 (Colo.2001).

7. In its reply brief, defendant argues for the first time that section 2–4–303, C.R.S 2012, precludes retroactive application of the current statute. However, we do not address arguments raised for the first time in a reply brief. *See In re Marriage of Drexler*, 2013 COA 43, ¶24.

stitutional as applied, only "if it either (1) impairs a vested right, or (2) creates a new obligation, imposes a new duty, or attaches a new disability." *DeWitt*, 54 P.3d at 855. Therefore, we eschew a fairness analysis and address the two criteria, as required by the supreme court.

### 1. "Impairs a Vested Right"

¶ 19 "[I]n the usual case, no person has a vested right in any rule of law entitling that person to insist it shall remain unchanged for his or her future benefit." *Nye*, 883 P.2d at 609; *see D.K.B.*, 843 P.2d at 1331 ("A right is only vested when it is not dependent upon the common law or the statute under which it was acquired for its assertion, but has an independent existence."). Instead, "[a] vested right must be a contract right, a property right, or a right arising from a transaction in the nature of a contract which has become perfected to the degree that it is not dependent on the continued existence of the statute or common law." *City of Golden*, 138 P.3d at 293 (quoting 1A Norman J. Singer, *Sutherland Statutory Construction* § 23.35 (6th ed.2002)); *see Miller v. Brannon*, 207 P.3d 923, 930–31 (Colo. App.2009) (repealing the No–Fault Act, which increased a defendant's liability for negligence damages, did not implicate a vested right because it "was neither a contract right, a property right, nor a right arising from a transaction in the nature of a contract. Rather, it was a right that existed solely by virtue of the statute").

¶ 20 Here, the hospital does not identify a contract or property right that prevents plaintiffs from asserting their negligent credentialing claim. Rather, the hospital seeks to avoid tort damages by relying on statutory immunity from damages. However, "[t]ort and contract law are distinct," *Mid Valley Real Estate Solutions V, LLC v. Hepworth–Pawlak Geotechnical, Inc.*, 2013 COA 119, ¶7, and must be treated as such.

¶ 21 The hospital cites no case, nor have we found one in Colorado, holding that a statutory immunity from tort damages becomes a vested right before the action has been filed and the immunity defense raised, at the earliest. *Cf. Smith v. Bd. of Educ.*, 83 P.3d 1157, 1167 (Colo.App.2003) ("[A] defendant has the burden of proving the affirmative defense of governmental immunity."). To the contrary, "[i]t is well established that where a statute gives certain rights of action upon grounds of public policy, no vested rights as to the continuance thereof are conferred." *Vail v. Denver Bldg. & Constr. Trades Council*, 108 Colo. 206, 212–13, 115 P.2d 389, 392 (1941).

¶ 22 Further, abrogating a statutory right "takes away all its benefits as regards incomplete actions existing at the time of the repeal." *Id.*; *see Kirk v. Denver Publ'g Co.*, 818 P.2d 262, 268 (Colo.1991) ("It is not within the power of a legislature to take away rights which have been once vested *by a judgment*. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases." (emphasis added) (quoting *McCullough v. Virginia*, 172 U.S. 102, 123–24, 19 S.Ct. 134, 43 L.Ed. 382 (1898))); *cf. Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 400 (Colo.2010) ("The employee's right to receive benefits [under workers' compensation] and the employer's and insurer's liability to pay those benefits gain independent legal existence *upon entry of an award* of benefits." (emphasis added) (internal citation omitted)).

¶ 23 The hospital cites *Denver, South Park & Pacific Railway Co. v. Woodward*, 4 Colo. 162 (1878) (*Woodward II*), for the proposition that "[r]egardless of whether a right is vested, a statute is retrospective, and therefore impermissible, 'if it affect[s] an existing cause of action or an existing right of defense.'" However, *Woodward II* does not stand for this proposition.

¶ 24 The opinion cited by the hospital, which was on petition for rehearing, is the second of two, identically-named opinions by the supreme court. In the first opinion, *Denver, South Park & Pacific Railway Co. v. Woodward*, 4 Colo. 1, 12 (1877) (*Woodward I*), the supreme court affirmed a judgment based on a statutory cause of action. The supreme court then allowed supplemental briefing on the argument that, because the

General Assembly had repealed the applicable statute during the pendency of the appeal, the judgment should be reversed. *See Woodward II,* 4 Colo. at 163.

¶ 25 In *Woodward II,* which the hospital cites, the supreme court denied the petition for rehearing. The court held that retroactive application of the repealing statute would have been retrospective because the defendant's rights "have been carried into judgment." *Id.* at 169. Thus, as noted by the supreme court in *Vail,* 108 Colo. at 214, 115 P.2d at 393 (1941), the statutory rights in *Woodward II* had vested "under the old statute before its repeal by the enactment condemned as being retrospective in effect."

¶ 26 Hence, to the extent *Woodward II* held that statutory claims vest at final judgment, the holding is inapplicable here, as no judgment has been entered. And to the extent that the opinion briefly mentions "existing right[s] of defense," *Woodward II,* 4 Colo. at 165, such language is dictum, which we are not bound to follow.[8] *See Applewood Gardens Homeowners' Ass'n, Inc. v. Richter,* 42 Colo.App. 510, 511, 596 P.2d 1226, 1227 (1979) (dicta are "determinative of nothing, and are not binding").

¶ 27 The hospital's citation to *Day v. Madden,* 9 Colo.App. 464, 48 P. 1053 (1897), is unpersuasive. There, the court of appeals held that the trial court erroneously relied on an amended statute to quash a writ of attachment. The court of appeals concluded that the amended statute did not require quashing the writ because the statute should be read "as though it contained a provision that it should not be taken to extend to or affect any suits or proceedings already begun." *Id.* at 476, 48 P. at 1058. Yet, the court "preferred ... to put [its] decision on constitutional grounds," and concluded that the amended statute was also retrospective. *Id.* at 477–78, 48 P. at 1058.

¶ 28 On review, the supreme court ordered dismissal of the writ of error. *Madden v. Day,* 24 Colo. 418, 421, 51 P. 165, 166 (1897). The court concluded that addressing the con-

stitutional question was unnecessary given the court of appeals' conclusion on the statutory ground, and "unless a constitutional question ... is necessary to the determination of the particular controversy, appellate jurisdiction upon that ground does not exist." *Id.* at 420, 51 P. at 166; *see also Tucker v. Claimants in Death of Gonzales,* 37 Colo. App. 252, 256, 546 P.2d 1271, 1275 (1975) (addressing the retrospectivity of the statute at issue "would not be warranted," given the division's conclusion that the statute was not applied retroactively), *abrogated by statute on other grounds,* ch. 114, sec. 1, § 13–80–108, 1986 Colo. Sess. Laws 699–700.

¶ 29 For the same reason, the hospital's reliance on the retrospectivity discussion in *Pollock v. Highlands Ranch Community Ass'n, Inc.,* 140 P.3d 351 (Colo.App.2006), is misplaced. Before that discussion, the division concluded that the statutory language "does not reflect any legislative intent, much less a clear intent, to apply it retroactively." *Id.* at 354. Additionally, and unlike here, the defendants argued only that the statute had been applied "prospectively because the statute was effective when plaintiff filed the complaint." *Id.*

¶ 30 Hence, potentially broad language in these cases does not alter our conclusion, especially in light of recent supreme court precedent. *Cf. People v. Esparza,* 2012 CO 22, ¶9, 272 P.3d 367 (declining to apply "broad language" in cases to create an equally broad rule because the reasoning in those cases "impl[ied] a more limited rule"). Therefore, applying the current statute did not impair any vested right of the hospital.

### 2. "Creates a New Obligation, Imposes a New Duty, or Attaches a New Disability"

¶ 31 "[I]f a vested right is not implicated, we must consider the 'new obligation, new duty, or new disability' prong of retrospectivity." *DeWitt,* 54 P.3d at 855. However, "the application of a statute is not rendered retrospective merely because the facts

---

**8.** Similarly, the hospital relies on dicta in *City of Colorado Springs v. Neville,* 42 Colo. 219, 223–24, 93 P. 1096, 1097–98 (1908) (Even had the General Assembly intended for an act to apply retroactively, "which it did not," the Colorado Constitution would have precluded its application because the plaintiff's cause of action had "vested.").

upon which it operates occurred before the adoption of the statute." *Id.* (internal citations and quotations omitted).

¶ 32 Abrogating the hospital's immunity from damages did not create a new duty or obligation because, under the former statute, the hospital had a duty of care in credentialing medical professionals. *See Settle v. Basinger,* 2013 COA 18, ¶¶ 57–58 (applying the elements of a negligent credentialing claim to an action under the former statute); *Kauntz,* 174 P.3d at 819 ("our interpretation [of the former statute] does not preclude negligent credentialing claims" under certain circumstances). Thus, the current statute did not "change the standard[ ] applicable to [the hospital]'s pre[-]2012 credentialing conduct[,]" as the hospital argues.

¶ 33 Additionally, although "imposition of a new disability" may make a statute retrospective, a court will so conclude only if the statute "impose[s] a 'disability' of constitutional magnitude." *DeWitt,* 54 P.3d at 857. Retroactive application of the current statute does not impose such a disability because the hospital operates in a highly regulated industry.

¶ 34 In *DeWitt,* the supreme court concluded that an amended statute, which stripped a beneficiary of insurance policy proceeds,[9] did not impose a disability because "[w]e have long recognized that the [G]eneral [A]ssembly may regulate the insurance industry." Likewise, the court concluded that the statute did not unconstitutionally burden a decedent who had named the beneficiary before the amendment because "[b]oth the insurance industry and probate process [are] highly regulated by statute in Colorado." *Id.* Thus, decedents "could reasonably expect that their life insurance policies would be regulated by statute, including the possibility of a statute addressing procedural changes in beneficiary designation." *Id.* at 857–58.

¶ 35 Similarly here, the health care industry has long been regulated under state law. *See Doran v. State Bd. of Med. Exam'rs,* 78 Colo. 153, 153, 240 P. 335, 335 (1925) (noting the creation of a legislatively-formed body "invested with power to protect the public health and to control and regulate the practice of medicine in this state"). And the hospital, "[a]s a participant in a regulated industry, . . . should have recognized the risk of further regulation," *Colorado Department of Public Health & Environment v. Bethell,* 60 P.3d 779, 785 (Colo.App.2002) (citing *DeWitt*), including legislative shifts in policy. Thus, we cannot conclude that retroactive application of the current statute imposes a disability of constitutional magnitude, which would require us to hold it retrospective.

¶ 36 Moreover, our supreme court has concluded that retroactive application of a statute is not unconstitutional "where the statute effects a change that is only procedural or remedial in nature." *Shell W. E&P,* 948 P.2d at 1012; *see Kuhn v. State,* 924 P.2d 1053, 1058 (Colo.1996) (treating "whether the attorneys' right to compensation from the common fund is a remedial or substantive right" as a substitute for the "new obligation, new duty, or new disability" prong of retrospectivity in *DeWitt*). And here, we further conclude that the current statute is remedial, for two reasons.

¶ 37 First, the former statute did not provide immunity from suit, but only immunity from damages.[10] *Kauntz,* 174 P.3d at 818; *see* Ch. 113, sec. 1, § 12–36.5–203, 1989 Colo.

9. *See DeWitt,* 54 P.3d at 852 ("Prior to July 1, 1995, Colorado law provided that the dissolution of marriage did not revoke a former spouse's designation as beneficiary of a life insurance policy absent an intent to the contrary expressed by the insured. In 1995, the [G]eneral [A]ssembly enacted section 15–11–804(2), [C.R.S.2012], which is based on the Uniform Probate Code (UPC) section 2–804. . . . Section 2–804 represents a legislative determination that the failure of an insured to revoke the designation of a spouse as beneficiary after dissolution of the marriage more likely than not represents inattention. Thus, section 15–11–804(2) attempts to give effect to the presumptive intent of the decedent. This section revokes all probate and nonprobate transfers to a spouse upon dissolution of a marriage, thus preventing an individual from receiving property from her former spouse's estate at death unless certain express provisions to the contrary apply." (citations and footnote omitted)).

10. *Kauntz,* 174 P.3d at 818, also notes that plaintiffs may pursue other, non-damage remedies under the former statute, such as a declaratory judgment action.

Sess. Laws 687 ("The following persons shall not be liable for damages...."); *see also Air Wis. Airlines Corp. v. Hoeper*, 2012 CO 19, ¶25 (noting "the distinction between immunity from suit and immunity from damages liability"), *cert. granted in part*, —— U.S. ——, 133 S.Ct. 2824, 186 L.Ed.2d 883 (2013). And compensatory damages are remedial in nature. *See Stamp v. Vail Corp.*, 172 P.3d 437, 448 (Colo.2007) (noting that compensatory damages are a "type[ ] of monetary remed[y]" in tort law); *cf. Vitetta v. Corrigan*, 240 P.3d 322, 327 (Colo.App.2009) ("The amended statute is plainly remedial in that it extends to ... plaintiffs the ability to obtain a form of damages.").

¶ 38 Second, "[a] statute is remedial if it does not create, eliminate, or modify vested rights or liabilities." *McBride*, 107 P.3d at 979; *see also Specialty Rests.*, 231 P.3d at 401 (noting that *McBride*'s determination that a statute was procedural was in "accord with [the supreme court's] interpretation"). And we have already determined that the hospital's statutory immunity is not a vested right or liability. *See supra* Part III. B.1.

¶ 39 In its reply brief, the hospital cites *Continental Title Co. v. District Court*, 645 P.2d 1310, 1315 (Colo.1982), for the proposition that statutes relating to defenses are per se substantive. However, the case does not support this assertion. *See id.* ("The effect of that section is only to provide an alternative remedy...."). While the court contrasted this statement with its statement that the statute "does not remove an affirmative defense," the court did not hold that a statute relating to defenses necessarily would be retrospective. *See id.* Nor did it cite any case so holding. To the contrary, the court reiterated that "application of a statute to a subsisting claim for relief" does not necessarily violate the "prohibition of retroactive legislation." *Id.* And the proceeding commenced under the statute at issue was "still at the conciliation stage." *Id.* at 1312.

¶ 40 The hospital emphasizes the difference between complete loss of immunity from damages and a damage limitation, arguing that the former must be treated as substantive, while conceding that the latter is reme-

dial. The supreme court repeatedly has held that statutes relating to remedies are not retrospective, as "[t]he abolition of an old remedy, or the substitution of a new one, neither constitutes the impairment of a vested right nor the imposition of a new duty, for there is no such thing as a vested right in remedies." *D.K.B.*, 843 P.2d at 1332; *accord Jefferson Cnty. Dep't of Soc. Servs. v. D.A.G.*, 199 Colo. 315, 318, 607 P.2d 1004, 1006 (1980); *Moore v. Chalmers–Galloway Live Stock Co.*, 90 Colo. 548, 554–55, 10 P.2d 950, 952 (1932).

¶ 41 Amending the former statute left hospitals potentially liable for damages from which they had previously been immune. However, even sizeable increases in recoverable damages are not necessarily unconstitutional. *See Vitetta*, 240 P.3d at 327 (concluding that a retroactive statute permitting lump-sum payment of damages was not retrospective, despite "recogniz[ing] that, even with present value and interest rate adjustments, the difference between immediate and periodic payment can have an enormous effect on the plaintiff's judgment" (quotations and citation omitted)).

¶ 42 Also, requiring courts to consider the extent to which a statute altered remedies in determining retrospectivity, rather than allowing them to rely on a qualitative distinction, would be unworkable. For example, the General Assembly could alter statutory damages in numerous ways that would raise subtle questions of degree, such as increasing a statutory damage cap from a nominal amount by a factor of ten or one hundred. But drawing fine, quantitative distinctions would erode predictability in reviewing the constitutionality of retroactive statutes. *See In re Reapportionment of Colo. Gen. Assembly*, 45 P.3d 1237, 1257 (Colo.2002) (Bender, J., dissenting) (expressing concern over a test for constitutional review of apportionment plans that "lacks predictability and defined standards," as this "will make it impossible for this court to render any consistent review of the constitutionality of future ... plans"); *cf. Baldwin v. Bright Mortg. Co.*, 757 P.2d 1072, 1074 (Colo.1988) (recognizing "a goal of obtaining operational consistency

and predictability" in the Supreme Court's application of a federal statute).

### IV. Conclusion

¶ 43 We affirm the trial court's order denying the motion to dismiss, and we remand for further proceedings consistent with this opinion.

JUDGE TERRY and JUDGE GABRIEL concur.