Opinion by JUDGE GABRIEL
¶ 1 In this construction defect case, plaintiff, Taylor Morrison of Colorado, Inc. f/k/a Morrison Homes of Colorado, Inc. (Taylor), appeals (1) the trial court's order dismissing Taylor's claims against defendant, Terracon Consultants, Inc., with prejudice; and (2) the jury verdict in favor of defendant, Bemas Construction, Inc. As an apparent matter of first impression, we conclude that applying the Homeowner Protection Act of 2007, § 13-20-806(7), C.R.S.2013 (HPA), to invalidate the limitation of liability clauses in Taylor's contracts with Terracon would be unconstitutionally retrospective. We also conclude, however, that further proceedings are necessary to determine whether Taylor should have been permitted to introduce evidence of Terracon's willful and wanton conduct to attempt to overcome Terracon's assertion of the limitation of liability clauses.
*75 Finally, we reject Taylor's argument that if it is ultimately entitled to a new trial against Terracon, then it is also entitled to a new trial against Bemas.
¶ 2 Accordingly, we affirm the judgment in favor of Bemas and remand the case for further proceedings concerning Terracon.
I. Background
¶ 3 Taylor was the developer of a residential subdivision known as Homestead Hills (the Project). Pursuant to written contracts with Taylor, Terracon performed certain geotechnical engineering and construction materials testing services at the Project. In addition, Taylor engaged Bemas to perform site grading, including overlot and subexcavation work.
¶ 4 After many of the homes were constructed, Taylor began receiving complaints from homeowners about cracks in the drywall of their homes. Taylor investigated these complaints and incurred significant expense to remedy the defective conditions that it found. It then sued Terracon and Bemas for, among other things, breach of contract and negligence, seeking to recover the expenses that it incurred in conducting its investigation and in making the necessary repairs.
¶ 5 Ten months after the court's deadline to amend pleadings, Taylor moved for leave to amend its complaint to add claims against Terracon for gross negligence, negligent misrepresentation, and fraudulent misrepresentation/ concealment, as well as a demand for exemplary damages. These proffered claims were based on, among other things, allegations that Terracon had willfully and wantonly breached duties to Taylor when it purportedly ignored or concealed inadequate subsurface soils conditions at the Project. The trial court, however, denied Taylor's motion to amend, concluding that (1) the motion was untimely, (2) Taylor had not established good cause for its delay in seeking to amend its complaint, and (3) Terracon would be unduly prejudiced were the court to grant the motion because the new claims would "significantly alter the basic thrust of the relief [Taylor] seeks" and would effect "a drastic change in the character of the case and Terracon's potential exposure to exemplary damages."
¶ 6 In addition to the foregoing motion for leave to amend, Taylor filed a motion pursuant to C.R.C.P. 56(h), asking the trial court to determine whether the HPA invalidated the limitation of liability clauses in its contracts with Terracon. Terracon responded that the HPA applies only to protect residential property owners, not commercial entities like those at issue here. Alternatively, Terracon asserted that the HPA does not apply retroactively to contracts executed and performed prior to its enactment and that applying the HPA retroactively to void Terracon's limitation of liability clauses would be unconstitutionally retrospective. The trial court agreed with Terracon's primary argument and concluded that the HPA did not invalidate the limitation of liability clauses at issue because it applies to protect only residential property owners and not commercial entities.
¶ 7 Thereafter, Terracon moved for leave to deposit into the court's registry $550,000, representing the maximum amount that Taylor could recover from Terracon under the contractual limitation of liability clauses and the above-described court order. In addition, Terracon asserted that upon the court's acceptance of Terracon's deposit, the court should declare Taylor's claims against Terracon moot and should dismiss those claims with prejudice.
¶ 8 Taylor opposed Terracon's motion, arguing, as pertinent here, that Terracon's willful and wanton conduct was not subject to any contractual limitation of liability. Taylor further asserted that its expert reports established such willful and wanton conduct.
¶ 9 The trial court ruled in favor of Terracon, noting that Taylor's operative complaint did not allege or seek to recover exemplary damages for willful and wanton conduct. The court thus authorized Terracon to deposit the $550,000 liability limit into the court's registry. Once Terracon did so, the court found that all of Taylor's claims against Terracon were moot and dismissed those claims with prejudice.
¶ 10 Taylor then proceeded to trial against Bemas. At trial, the parties agreed that *76 Terracon was responsible for soils testing at the Project and that Terracon, at the very least, had made mistakes on the Project. The parties disputed, however, whether Bemas bore any responsibility for these mistakes. Taylor argued that (1) Bemas had continued its work at certain sites knowing that Terracon had not properly inspected the soils at those sites, and (2) Bemas was therefore responsible for damages resulting from its work at those sites. Bemas, in contrast, argued that Taylor had not shown that Bemas proceeded without first receiving Terracon's field tests.
¶ 11 Ultimately, the jury returned a verdict in Bemas's favor on all of Taylor's claims against it.
¶ 12 Taylor now appeals.
II. The HPA
¶ 13 The HPA provides, in pertinent part:
In order to preserve Colorado residential property owners' legal rights and remedies, in any civil action or arbitration proceeding described in section 13-20-802.5(1), any express waiver of, or limitation on, the legal rights, remedies, or damages provided by the "Construction Defect Action Reform Act" ... [is] void as against public policy.
§ 13-20-806(7)(a).
¶ 14 Taylor contends that the trial court erred in ruling that this provision did not invalidate the limitation of liability clauses in Taylor's contract with Terracon. We agree with the district court that the HPA did not invalidate the limitation of liability clauses, but we reach this conclusion for reasons different from those employed by the trial court. See Premier Members Fed. Credit Union v. Block, 2013 COA 128, ¶ 9, 312 P.3d 276, 278 ("We may affirm a trial court's ruling on any ground that is supported by the record.").
¶ 15 Specifically, the trial court agreed with Terracon and stated that the HPA applies only to protect residential property owners, not commercial entities. We need not address this issue, however, because even if Taylor were correct that the trial court erred in this regard, an issue on which we express no opinion, we agree with Terracon's alternative argument that retroactive application of the HPA on the facts presented here would be unconstitutionally retrospective.
A. Standard of Review and Applicable Law
¶ 16 We review de novo whether a statute has been applied in violation of retroactivity principles. See Vaccaro v. Am. Family Ins. Grp., 2012 COA 9, ¶ 16, 275 P.3d 750, 755.
¶ 17 "Legislation is applied prospectively when it operates on transactions that occur after its effective date, and retroactively when it operates on transactions that have already occurred or rights and obligations that existed before its effective date." Ficarra v. Dep't of Regulatory Agencies , 849 P.2d 6, 11 (Colo.1993). "A statute is presumed to be prospective in its operation." § 2-4-202, C.R.S.2013; accord People v. Summers , 208 P.3d 251, 256 (Colo.2009). The General Assembly may override this presumption, however, by clearly expressing a contrary intent. See Summers , 208 P.3d at 256.
¶ 18 An expression of legislative intent that a statute should be applied retroactively, however, does not end our inquiry. Our constitution prohibits the General Assembly from passing laws that are "retrospective" in their operation. Colo. Const. art. II, § 11. "A law is unconstitutionally retrospective if it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." Abromeit v. Denver Career Serv. Bd., 140 P.3d 44, 51 (Colo.App.2005).
¶ 19 "The retroactive application of a statute is not in and of itself unconstitutional. Thus, when a statute effects a change that is not substantive, but, for example, is procedural or remedial in nature, the retroactive application of that statute does not violate the constitutional prohibition against retrospective legislation."
*77 Meyerstein v. City of Aspen, 282 P.3d 456, 465 (Colo.App.2011) (citation omitted).
¶ 20 A statutory change is substantive when it creates, eliminates, or modifies vested rights or liabilities. People v. D.K.B., 843 P.2d 1326, 1331 (Colo.1993). A right is vested only when the right to assert it does not depend on the common law or the statute under which it was acquired, but rather has an independent existence. Abromeit, 140 P.3d at 51.
[A] vested right "must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another."
Ficarra , 849 P.2d at 16 (quoting People ex rel. Eitel v. Lindheimer , 371 Ill. 367, 21 N.E.2d 318, 321 (Ill.1939) ). Thus, a vested right must be a contract right, a property right, or a right arising from a transaction in the nature of a contract that has become perfected to the degree that it is not dependent on the continued existence of a statute or common law. City of Golden v. Parker, 138 P.3d 285, 293 (Colo.2006).
¶ 21 In determining whether a right is vested, courts consider (1) whether the public interest is advanced or retarded, (2) whether the statute at issue gives effect to or defeats the bona fide intentions or reasonable expectations of the affected party, and (3) whether the statute surprises those who have relied on contrary law. Id. at 290.
¶ 22 A determination that retroactive application of a law impairs a vested right, however, is not necessarily dispositive of the retrospectivity inquiry because such a finding may be balanced against public health and safety concerns, the state's police powers to regulate certain practices, and other public policy considerations. Id. "Retroactive application of a law that implicates a vested right is only permissible ... if the law bears a rational relationship to a legitimate government interest." Id.
B. Application
¶ 23 Here, the HPA provides that it "shall take effect upon passage and shall apply to actions filed on or after said date." Ch. 164, sec. 3, 2007 Colo. Sess. Laws 611. A division of this court has concluded, and we agree, that when legislation purports to apply to actions filed "on or after" a certain date, such language necessarily requires retroactive application of the statute because for an action to be filed on the effective date, it must have accrued prior to that date. Hickman v. Catholic Health Initiatives, 2013 COA 129, ¶ 12, 2013 WL 4727266.
¶ 24 The question thus becomes whether retroactive application of the HPA violates our constitution's prohibition against retrospective legislation. For several reasons, we conclude that it does here.
¶ 25 First, the right at issue in this case was vested because it was a perfected contract right and was not dependent on the continued existence of a statute or the common law. See City of Golden, 138 P.3d at 293.
¶ 26 Second, retroactive application of the HPA here would obviously defeat Terracon's bona fide intentions or reasonable expectations. See id . at 290. Specifically, under the case law existing at the time Taylor and Terracon signed the contracts at issue, absent willful and wanton conduct, these two sophisticated commercial entities would have reasonably expected that the limitation of liability clauses in their construction contracts would be enforced. See Rhino Fund, LLLP v. Hutchins, 215 P.3d 1186, 1191 (Colo.App.2008) (noting, "[a]s a general rule, courts will uphold an exculpatory provision in a contract between two established and sophisticated business entities that have negotiated their agreement at arm's length," but adding, "[m]ost courts will not enforce exculpatory and limiting provisions if ... they purport to relieve parties from their own willful, wanton, reckless, or intentional conduct"); see also 1745 Wazee LLC v. Castle Builders Inc ., 89 P.3d 422, 426 (Colo.App.2003) (rejecting the plaintiff's argument that public policy barred the defendant from relying on an exculpatory clause in the parties' contract because, among other things, the *78 contract between the parties was fairly entered into and resulted from arm's length bargaining, and the parties' intentions were clearly expressed in their contract).
¶ 27 Third, for the same reason, and because we have seen nothing in the record to suggest that Terracon had any reason to believe that legislation concerning limitation of liability clauses in construction contracts was forthcoming or likely, the record shows that Terracon would have been surprised by the retroactive application of the HPA to invalidate the limitation of liability clauses at issue. See City of Golden, 138 P.3d at 290.
¶ 28 We are not persuaded otherwise by Taylor's and amicus Homeowners Against Deficient Dwellings' (HADD's) argument that because the construction industry is heavily regulated, Terracon should have expected that the limitation of liability clauses might not be enforced. Cases like Alliance of Automobile Manufacturers v. Gwadosky, 304 F.Supp.2d 104 (D.Me.2004), which HADD cites, are distinguishable. Gwadosky involved a legislative enactment that prohibited automobile manufacturers from recovering their costs for reimbursing dealers for parts and labor in connection with warranty repairs. Id. at 109. A manufacturers' trade association challenged this enactment, arguing, among other things, that it unconstitutionally impaired manufacturers' rights under their contracts with dealers. Id. at 114. The court, however, rejected this argument, concluding, as pertinent here, that the legislative enactment did not substantially impair the manufacturers' reasonable expectations. Id. at 116. The court based this conclusion on the fact that the "warranty reimbursement area" had been the subject of steadily increasing state restriction, by both the legislature and the courts, for many years. Id. at 115. Indeed, the court observed that judicial action that led to the legislative enactment at issue had created a hole in the regulatory scheme and that "it was virtually inevitable this hole would be statutorily plugged." Id. Moreover, the court noted that certain contracts that the manufacturers' trade association had cited as "representative" anticipated regulatory change. Id. at 116.
¶ 29 In our view, Gwadosky and cases like it envision a level of regulation that would put contracting parties on notice that particular legislation impacting a contract provision was foreseeable. See id. at 115 ("In light of the extensive history, both legislative and judicial, this Court views with utmost skepticism [the manufacturers' trade association's] claim that [a certain legislative enactment] was 'not foreseeable.' "). Here, we see nothing in the record that would have put Terracon on notice that the limitation of liability clauses at issue could be invalidated. Rather, Taylor and HADD make only general allegations that because the construction industry had been subject to legislative regulation, Terracon should have foreseen that the General Assembly could possibly act on limitation of liability clauses at some undetermined point. We cannot agree that such vague and general allegations are sufficient for purposes of Contract Clause analysis.
¶ 30 Finally, balancing the impairment of Terracon's vested rights against the public policy considerations behind the HPA supports our conclusion that applying the HPA here would be unconstitutionally retrospective. As noted above, the expressed purpose of the HPA is to protect Colorado residential property owners' rights and remedies. Thus, the HPA's legislative history contains statements by various legislators noting that the legislation was aimed at protecting consumers who had no bargaining power vis-à-vis construction professionals but who were being forced to sign contracts containing waivers of substantial rights. See, e.g., Hearings on H.B. 07-1338 before the H. Judiciary Comm., 66th Gen. Assemb., 1st Sess. (Mar. 21, 2007) (statement by Rep. Pommer); Hearings on H.B. 07-1338 before the Comm. of the Whole, 66th Gen. Assemb., 1st Sess. (Mar. 28, 2007) (statement by Rep. Levy). There is no such concern here, however, because the record shows that the contracts at issue were the products of arms-length negotiations between sophisticated commercial entities. Moreover, applying the HPA to invalidate the limitation of liability clauses in the contracts at issue would have, at best, only an incidental (and, in our view, speculative) impact on residential property owners. In contrast, the impact on Terracon's vested *79 contractual rights would be immediate and substantial. On such a record, we cannot say that balancing the impairment of Terracon's vested rights against the public policy considerations behind the HPA justifies the HPA's retroactive application.
¶ 31 For these reasons, we conclude that applying the HPA to invalidate the limitation of liability clauses in the contracts between Taylor and Terracon would be unconstitutionally retrospective here.
¶ 32 We are not persuaded otherwise by Taylor's suggestion that Terracon cannot properly raise the issue of the HPA's retrospectivity because Terracon did not notify the Attorney General of this constitutional argument pursuant to section 13-51-115, C.R.S.2013. Such notice is not required when, as here, a party is not contending that a statute is facially unconstitutional but rather is asserting that applying the statute retroactively would be unconstitutional. See In re Marriage of Davis, 252 P.3d 530, 533 (Colo.App.2011).
¶ 33 Nor are we persuaded by Taylor's argument that application of the HPA here would not be unconstitutionally retrospective because the HPA effected a change that was merely remedial and not substantive. In Pollock v. Highlands Ranch Cmty. Ass'n, 140 P.3d 351, 354 (Colo.App.2006), a division of this court concluded that a statute altering the validity of waivers of certain negligence claims was substantive and not merely procedural or remedial. We view a statute altering the validity of limitation of liability clauses as analogous.
¶ 34 And we are unpersuaded by Taylor's assertion that, for a number of different reasons, the HPA may constitutionally be applied retroactively when at least one residential property owner is a party to the contract. This argument is inapposite because all of the parties to the applicable contracts in this case were construction professionals; none was a residential property owner.
III. Willful and Wanton Conduct
¶ 35 Taylor next contends that even if application of the HPA to invalidate the limitation of liability clauses at issue would be constitutionally retrospective, it still should have been permitted to present evidence that Terracon's willful and wanton conduct invalidated those clauses, notwithstanding the trial court's denial of its motion for leave to amend its complaint. Because the record is insufficient to allow us to decide this question, we remand for further proceedings.
¶ 36 Here, in response to Terracon's request that it be permitted to deposit into the court's registry the $550,000 contractual liability limit and Terracon's assertion that the court should then dismiss Taylor's claims with prejudice, Taylor argued that Terracon's willful and wanton conduct provided an independent basis for invalidating the limitation of liability clauses. See Core-Mark Midcontinent, Inc. v. Sonitrol Corp. , 2012 COA 120, ¶ 15, 300 P.3d 963, 969 (noting that limitation of liability clauses do not apply to willful and wanton conduct). The trial court rejected this argument, however, stating, "[P]laintiff's Amended Complaint does not allege or seek to recover exemplary damages for willful and wanton conduct," and "[T]he Court denied plaintiff's motion to amend its complaint and assert such conduct in an effort to recover exemplary damages."
¶ 37 We, however, see the questions of Taylor's effort to amend its complaint and of its request to introduce evidence in response to Terracon's assertion of the limitation of liability clauses as separate and distinct. Specifically, Taylor's right to introduce evidence in response to Terracon's defenses does not turn on whether Taylor pleaded the responsive facts or sought exemplary damages in its complaint. Taylor's right to introduce such evidence may, however, turn on other factors.
¶ 38 Because it does not appear that the trial court ruled on the precise question of whether Taylor had the right to introduce evidence in response to Terracon's assertion of the limitation of liability clause (i.e., as distinct from Taylor's effort to amend its complaint), we remand to allow that court to address this question in the first instance. Nothing in this opinion should be construed to express any opinion as to how the trial court should rule on this question.
*80 IV. Bemas
¶ 39 Finally, Taylor argues that if a new trial is ordered against Terracon, then Taylor should also be granted a new trial as to Bemas. Taylor asserts that the improper dismissal of Terracon purportedly gave Bemas the unfair advantage of being able to try its case by blaming the empty chair in which Terracon should have sat. We are not persuaded.
¶ 40 Whenever a new trial must be held on one issue, a new trial must also be held with respect to other issues unless (1) the issue to be retried is entirely distinct and separable from the other issues involved in the case, and (2) a partial retrial can be had without injustice to any party. Gerrity Oil & Gas Corp. v. Magness, 946 P.2d 913, 934 (Colo.1997). This principle has been applied to situations like that present here, in which the question was whether a retrial against one party necessarily required a retrial against a party who had been exonerated. See Trione v. Mike Wallen Standard, Inc., 902 P.2d 454, 458-59 (Colo.App.1995). In these cases, the determinative considerations are those relating to fairness, with the focus being on the relationship between the evidentiary issues and the practical logistics of retrial. Gerrity Oil, 946 P.2d at 934.
¶ 41 Here, for several reasons, we conclude that the issue of Bemas's liability is distinct and separable from the issue of Terracon's liability and that there would be no injustice or unfairness to Taylor in allowing the verdict for Bemas to stand, notwithstanding any retrial ordered against Terracon.
¶ 42 First, the record shows that Terracon's absence did not prejudice Taylor's case against Bemas. Taylor was seeking to hold Bemas responsible, at least in part, for Terracon's mistakes in the course of the Project, and in Terracon's absence, all parties agreed that Terracon had made such mistakes. Accordingly, Terracon's absence made it easier for Taylor to establish this part of its claim against Bemas.
¶ 43 Second, because Taylor's breach of contract claim against Bemas was not subject to allocation of damages based on the comparative fault of the parties, see Core-Mark Midcontinent, 300 P.3d at 975-76 (noting that the statute concerning pro rata liability of defendants in civil actions allows for the apportionment of liability only in tort actions), Taylor could (and did) seek to hold Bemas liable for all of the damages in this case, including those caused by Terracon, without the impediment of having Terracon dispute such contentions.
¶ 44 Third, were the trial court to order a new trial as to Terracon, we perceive no injustice, unfairness, or logistical difficulty in allowing the trial to proceed without Bemas as a party. Taylor had a full and fair opportunity to present its case against Bemas. Moreover, in a trial against only Terracon, Taylor's breach of contract claim would be unaffected by Bemas's absence because, as noted above, such a claim would not be subject to allocation of damages based on the comparative fault of the parties. See id. And Taylor's tort claim against Terracon would be unaffected by the previous verdict as to Bemas because, as Taylor appears to concede, it would have no interest in challenging the verdict for Bemas because its goal would be to maximize Terracon's liability.
¶ 45 Trione, 902 P.2d at 458-59, on which Taylor relies, is not contrary to our holding here. In Trione, a towed car swung into the oncoming lane of traffic, hitting the plaintiffs' vehicle and injuring the plaintiffs. Id. at 456. The plaintiffs then sued the tow truck driver, his employer, and the manufacturer of a steering wheel locking device that was supposed to secure the steering wheel of the towed vehicle to prevent it from swerving as it was towed. Id. At trial, the jury returned a verdict for all of the defendants, but on a motion for a new trial, the trial court found that it had erred in giving a particular jury instruction. Id. at 456-57. The court thus ordered a new trial as to all of the defendants. Id. Subsequently, however, the court reversed itself in part and ruled that the new trial would proceed only against the driver and his employer, because the court concluded that the erroneous instruction did not implicate the manufacturer. Id. at 457.
¶ 46 On appeal, the division reversed, concluding that the facts relating to the manufacturer's *81 liability, the liability of the driver and his employer, and the parties' respective defenses were "inextricably interwoven." Id. at 458. Specifically, the division observed:
[R]eferences to [the manufacturer's] product permeated the second trial and unfairly prejudiced plaintiffs' ability to present its claims against [the driver and his employer]. As the trial court initially recognized in granting a new trial as to all parties, the potential for confusion by the jury was apparent. There was no way to exclude evidence about the product from the trial, because even if [the manufacturer] was excluded, the jury could easily confuse evidence of [the driver's and employer's] legitimate defenses with evidence relating to the product liability claims against [the manufacturer].
Id . at 459.
¶ 47 Here, unlike in Trione, Bemas contended that there was no evidence that Terracon had failed to perform the requisite testing. Accordingly, Bemas did not try its case by blaming Terracon. Moreover, unlike in Trione, we perceive no risk that claim preclusion or other factors would likely cause juror confusion were Taylor to try its case solely against Terracon. Specifically, unlike in Trione, Taylor has failed to demonstrate that it could not try its case against Terracon without also retrying its case against Bemas. This is particularly true here, where the actions of each of the defendants were separate and distinct and where Taylor's claims against Bemas were, at least in part, derivative of its claims against Terracon.
¶ 48 Accordingly, we reject Taylor's assertion that if a new trial is ordered as to Terracon, then a new trial must also be ordered as to Bemas. We thus affirm the judgment in favor of Bemas.
V. Conclusion and Remand Order
¶ 49 For these reasons, the judgment in favor of Bemas is affirmed, and the case is remanded with instructions that the trial court determine whether Taylor should have been permitted to introduce evidence of Terracon's willful and wanton conduct for the sole purpose of attempting to overcome Terracon's assertion of the limitation of liability clauses at issue. If the trial court concludes that Taylor should have been allowed to introduce such evidence, then the court shall order a trial as to Terracon, subject to Terracon's right to appeal once a judgment is final. If the trial court determines that Taylor was properly precluded from introducing such evidence, then the judgment in favor of Terracon shall stand affirmed, subject to Taylor's right to appeal from that judgment, which appeal would be limited to any issues arising from the court's preclusion order.
JUDGE HAWTHORNE and JUDGE LICHTENSTEIN concur.